**Lester SLOTNICK, Plaintiff, Appellant,**

v.

**Harold STAVISKEY et al., Defendants, Appellees.**

**No. 76–1533.**

United States Court of Appeals,
First Circuit.

July 28, 1977.

Lester Slotnick, pro se.

Richard Rogalin, Quincy, Mass., on brief, for Philip Fixman, defendant, appellee.

Robert A. Greeley, Boston, Mass., on brief for Harold Staviskey and Stanley Stillman, defendants, appellees.

Francis X. Bellotti, Atty. Gen., and Paula R. Rosen, Asst. Atty. Gen., Boston, Mass., on brief, for the Honorable Salvatore Aloisi, Stephen J. White and Freyda Koplow, defendants, appellees.

Before COFFIN, Chief Judge, ALDRICH and CAMPBELL, Circuit Judges.

COFFIN, Chief Judge.

This is an appeal from orders dismissing a § 1983 action. Appellant represented himself throughout this suit. His grievance arose when a credit union began a collection suit. In broad outline, he alleges that the suit was for an inflated amount; that a false affidavit was filed alleging that he had no defense to the claim; that he was brought into court for a determination of his ability to pay by a constable who lacked the authority to do so; that the state court judge determined that he could afford a payment schedule, but appellant said he would not comply with it; as a result, the judge held him in contempt of court and he was jailed briefly; and that finally his brother paid the debt. Throughout this period, he made complaints to the state banking commissioner's office, which investigated and concluded that the allegations were not well-founded.

Appellant then filed suit in federal court, naming as defendants the state court judge, his clerk, the constable, the treasurer of the credit union, the attorney for the credit union and the banking commissioner. He alleged that these parties "conspired to deprive the plaintiff of his civil rights."

The claims against several parties may be easily disposed of. The allegations against the banking commissioner were tangential to the central theme. The commissioner filed an affidavit in support of a motion for summary judgment. Appellant's counter-affidavit was made up of conclusory statements alleging the existence of a conspiracy. This situation was one that was

"ripe for summary judgment. . . . When a motion for summary judgment has been properly made and supported, an adverse party must set forth specific facts showing that there is a genuine issue for trial. Fed.R.Civ.P. 56(e). This plaintiff has failed to do." *Briggs v. Kerrigan,* 431 F.2d 967, 968 (1st Cir. 1970).

■ Returning to the principal parties, we note that the state court judge enjoys absolute immunity from suit under § 1983, *see Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 288 (1967), as does his clerk. *See Sullivan v. Kelleher,* 405 F.2d 486, 487 (1st Cir. 1968); *Waits v. McGowan,* 516 F.2d 203, 206 (3d Cir. 1975).

The district court considered the remaining defendants when they moved for a directed verdict at the close of the plaintiff's opening statement. After a painstaking inquiry into the plaintiff's grievances, the court concluded that the case against the remaining defendants should also be dismissed. The court stated that the "principal basis" of its decision was the doctrine of judicial immunity. Although two of the remaining parties were private parties, performing no judicial or quasi-judicial functions, the court concluded that they were protected by judicial immunity because they were accused of conspiring with a judge and his clerk. The district court relied on decisions in several other circuits holding that suits under § 1983 cannot be maintained against private parties who conspire with immune state officials. Although the court expressed doubts about the wisdom of these decisions, it felt bound to follow them. Nonetheless, the court also advanced a "subsidiary" ground: that plaintiff's claims did not rise to the dignity of constitutional violations.

■ Since the district court ruled, we have taken the position that private parties who conspire with immune officials may be sued under § 1983. *Kermit Constr. Corp. v. Banco Credito y Ahorro Ponceno,* 547 F.2d 1 (1st Cir. 1976). Although our position has

some support in other cases, *see Grow v. Fisher,* 523 F.2d 875 (7th Cir. 1975), *see also Fine v. New York,* 529 F.2d 70, 74 (2d Cir. 1975), a larger number take the contrary view. *See, e. g., Haldane v. Chagnon,* 345 F.2d 601, 604 (9th Cir. 1965); *Hill v. McClellan,* 490 F.2d 859, 860 (5th Cir. 1974); *Hansen v. Ahlgrimm,* 520 F.2d 768, 770 (7th Cir. 1975). *See also Hazo v. Geltz,* 537 F.2d 747, 749 (3d Cir. 1976). Whether we were right in *Kermit,* however, is not an issue that arises in this case, for the plaintiff's complaint fails a preliminary test.[1]

In an effort to control frivolous conspiracy suits under § 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts. *Dunn v. Gazzola,* 216 F.2d 709, 711 (1st Cir. 1954); *Kadar Corp. v. Milbury,* 549 F.2d 230 (1st Cir. 1977); *Fletcher v. Hook,* 446 F.2d 14 (3rd Cir. 1971); *Johnson v. Stone,* 268 F.2d 803 (7th Cir. 1959); *Ellingburg v. King,* 490 F.2d 1270 (8th Cir. 1974); *Powell v. Jarvis,* 460 F.2d 551 (2d Cir. 1972). This rule might have been applied with profit to this case.[2] The complaint contains frequent references to conspiracy, but it offers few insights into the specific nature of the alleged concerted action. The only specific allegation regarding a conspiracy is the statement that the constable forged illegal documents and served them on the plaintiff at the request of the credit union's lawyer and with the knowledge of the court's clerk. Despite language hinting at a wider conspiracy, the plaintiff has failed to plead facts supporting these vague claims, and the courts need not conjure up unpleaded facts to support these conclusory suggestions. *O'Brien v. DiGrazia,* 544 F.2d 543, 546 n. 3 (1st Cir. 1976).

The district court could properly have treated the complaint as charging only the narrower conspiracy. This view of the complaint is reinforced by the plaintiff's opening statement to the jury and the ensuing dialogue between trial judge and plaintiff, in which the judge helped the plaintiff to state systematically all of his claims against

---

1. Speaking only for himself, the writer of this opinion adds these remarks. He would not hesitate to disapprove *Kermit* without further ado if that decision were clearly wrong in the light of *Haldane v. Chagnon, supra,* and its progeny. But reflection does not undermine *Kermit.* Rather, *Haldane* itself was undercut by *United States v. Price,* 383 U.S. 787, 794, 86 S.Ct. 1152, 16 L.Ed.2d 267 (1966) and *Adickes v. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). These cases establish that private individuals who conspire with state officers are acting "under color" of state law, whether or not the state official is actually joined in the suit. *Id.* at 152, 90 S.Ct. 1598. It is hard to believe that the reasoning of *Price* would not apply if a judge, rather than a sheriff, conspired to release civil rights workers so that thugs could waylay and kill the workers. The judge who abuses his power is still acting under the color of law; he escapes damages liability only in order that his more conscientious brethren may do their jobs in peace. *See Pierson v. Ray,* 386 U.S. 547, 87 S.Ct. 1213, 18 L.Ed.2d 888 (1967); *Imbler v. Pachtman,* 424 U.S. 409, 96 S.Ct. 984, 47 L.Ed.2d 128 (1976). If the judge is still acting under color of law, so are his associates. To hold otherwise would give an ill-conceived defense to judge and conspirators alike, not only in federal damage suits, but in criminal prosecutions and actions for injunctive relief, where state action is also a prerequisite. *See United States v. Price, supra,* 383 U.S. at 794–95, n. 5, 86 S.Ct. 1152. *Cf. United States v. Wiseman,* 445 F.2d 792, 794 (2d Cir.), *cert. denied,* 404 U.S. 967, 92 S.Ct. 346, 30 L.Ed.2d 287 (1971). It is difficult also to explain *Haldane* as giving a separate "co-conspirator's immunity", in light of the absence of such at common law, and, while others accord substantial weight to the embarrassment and inconvenience which a judge might suffer if he could be summonsed into court as a witness, this writer looks upon such an interest as less important than that of bringing conspirators to book. *See Imbler v. Pachtman, supra,* 424 U.S. at 421, 96 S.Ct. 984. Moreover, as our disposition shows, careful scrutiny of pleadings can winnow out the insubstantial claim without resort to expanding immunities.

2. We do not criticize the district court for its handling of the case. Indeed, by letting the plaintiff deliver an opening statement to the jury and then by questioning the plaintiff about the nature of his claim, the trial judge showed painstaking care.

each defendant. In this way it was revealed that the plaintiff objected to the notices he received during the credit union's suit against him. He believed, for example, that the state seal should not have been attached to some of the documents served on him, that other documents were not properly signed or supported by affidavits, and that the constable was not empowered to serve process in cases involving more than $650. The plaintiff also had other grievances; he thought that the credit union and its attorney had sued for more than the proper amount and that they filed incorrect affidavits during the suit; finally, he believed that the judge had incorrectly jailed him for refusing to pay the judgment. Despite a lengthy colloquy, the plaintiff again made only one allegation of conspiracy under color of state law. Again the plaintiff claimed that the credit union's lawyer had conspired with the constable to harass the plaintiff into court by means of alleged procedural irregularities and threatening phone calls.

■ With the conspiracy charges thus narrowed, the district court's action was clearly correct. The court was able to conclude that the plaintiff was largely wrong in his view of what procedures were required by state law. In addition, the court held, and we agree, that none of the procedural defects that lie at the heart of the alleged conspiracy violated the plaintiff's constitutional right to due process. *Cf. Smith v. Organization of Foster Families for Equality and Reform,* 431 U.S. 816, 97 S.Ct. 2094, 53 L.Ed.2d 14 (1977). The notice given to the plaintiff was adequate; he had ample opportunity for a hearing in state court, where his hypertechnical objections belong. The simple fact that state law prescribes certain procedures does not mean that the procedures thereby acquire a federal constitutional dimension. *See Screws v. United States,* 325 U.S. 91, 108, 65 S.Ct. 1031, 89 L.Ed. 1495 (1945) (opin. of Douglas, J.); *Street v. Surdyka,* 492 F.2d 368, 371 (4th Cir. 1974). *Cf. Bishop v. Wood,* 426

U.S. 341, 96 S.Ct. 2074, 48 L.Ed.2d 684 (1976).[3]

*Affirmed.*

---

3. The plaintiff also charges the trial judge with bias. There is no merit in this claim.