**CROATAN BOOKS, INC. t/a**
**Showplace Books**

v.

**COMMONWEALTH OF VIRGINIA,**
**et al.**

**Civ. A. No. 83–0379–R.**

United States District Court,
E.D. Virginia,
Richmond Division.

Nov. 4, 1983.

---

6. See, also, *Iluminada Rivera Encarnación v. Commonwealth of Puerto Rico, et al.,* 82 JTS 136

Clarence B. Neblett, Jr., Richmond, Va., Burton W. Sandler, Towson, Md., for plaintiff.

Alan Katz, Richard B. Smith, Asst. Attys. Gen., Joel Peck, Lewis S. Minter, Richard Bennett, Browder, Russell, Morris & Butcher, Richmond, Va., for defendants.

## OPINION

WARRINER, District Judge.

Presently before the Court are defendants Commonwealth of Virginia, the State Corporation Commission, and Attorney General of Virginia Gerald L. Baliles' motion to dismiss each as a party defendant. Plaintiff has not responded within the time permitted by Local Rule 11(F).

Claiming violations of rights protected under 42 U.S.C. § 1983 and 42 U.S.C. § 1985, plaintiff, a corporation chartered by the Virginia State Corporation Commission, seeks preliminary and permanent injunctive relief, compensatory damages of $300,000 and punitive damages of $300,000. It requests as well a declaratory judgment, under 28 U.S.C. §§ 2201 and 2202, that the threatened application of § 13.1–93 of the Code of Virginia will deprive plaintiff of rights protected under the First, Fifth, and Fourteenth Amendments. In addition, plaintiff asks for attorney's fees under 42 U.S.C. § 1988.

Plaintiff was incorporated under the laws of the Commonwealth of Virginia on 9 September 1975 for the stated purpose of engaging in retail and chain distribution of novelties, magazines, books, and newspapers. Between 1978 and 1982, plaintiff

was convicted scores of times for feloniously distributing obscene materials; on several similar charges plaintiff was acquitted, with eight such acquittals having occurred in 1982.[1] In January of 1983, the grand jury returned yet another felony indictment against plaintiff, again for distributing obscene material. On 19 January 1983, Attorney General of Virginia Baliles sought from the State Corporation Commission an order that plaintiff show cause why its corporate charter should not be dissolved under authority of Va.Code § 13.1–93 on the grounds that it had "continued to exceed or abuse the authority conferred upon it by the law." The State Corporation Commission issued a show-cause order on 24 March 1983, a hearing was set for 19 May 1983, but on plaintiff's motions before the State Corporation Commission it has been at least three times continued. According to the record before this Court it has still not been heard by the State Corporation Commission. A request for a temporary restraining order as to one of the continued hearings was denied by this Court.

Plaintiff filed his complaint on 24 June 1983, alleging that defendants conspired to close down plaintiff's business, the selling of books and materials centered on sexual activities, by unlawfully applying Code of Virginia § 13.1–93 (1950) to revoke plaintiff's corporate charter due to alleged misuse or abuse of it. Plaintiff claims that the results of the alleged conspiracy are violation of rights presumptively protected under the First Amendment, and the perpetuation of a chilling effect upon the exercise of its First Amendment rights. Plaintiff claims that it has suffered damages, resulting from the substantial interference with its ability to conduct an ongoing business and that it will continue to lose income. It contends that it has been deprived of equal protection of the laws secured by the Fifth and Fourteenth Amendments to the Constitution, basing this claim on the fact that the State Corporation Commission has nev-

er before revoked the charter of an existing corporation because of its past convictions under a criminal statute.

Defendants have responded with separate motions to dismiss. In passing on the motions the Court will consider not only the allegations of the complaint but also the evidence and admissions made at the hearing on plaintiff's motion for a TRO. In ruling on a motion to dismiss, a federal court, if it refers to matters outside the complaint, will treat the motion as one for summary judgment. Here, however, the situation is different; it is plaintiff whose evidence is being considered, not that of defendant-movant. Plaintiff thus has the benefit of the most expansive reading possible given to his complaint, while defendants, whose motions will be granted, have no occasion for dismay. These motions will be granted for the reasons presented below:

## I

On 15 July 1983, defendant Commonwealth of Virginia moved to dismiss plaintiff's complaint against her, pursuant to Fed.R.Civ.P. 12(b)(6), for failure to state a claim on which relief can be granted. The Commonwealth bases its motion on a claim of sovereign immunity under the Eleventh Amendment to the Constitution, which immunity deprives this Court of jurisdiction to entertain suit against it either for damages, declaratory, or injunctive relief.

*Alabama v. Pugh*, 438 U.S. 781, 782, 98 S.Ct. 3057, 3058, 57 L.Ed.2d 1114 (1978), stands squarely for the proposition that a suit may generally *not* be maintained against a State which has not waived its sovereign immunity. Dealing specifically with the Commonwealth of Virginia, in *Jacobs v. College of William & Mary*, 495 F.Supp. 183, 190 (E.D.Va.1980), the district court considered Section 8.01–192 of the Virginia Code, which allows certain claims against the Commonwealth to be brought

---

**1.** Convictions, and acquittals, for the most part were under Va.Code §§ 18.2–374, 18.2–380–81

(Repl.Vol.1982).

in its circuit courts and rejected the argument that this narrow waiver operates as a blanket consent to be sued in federal courts:

A state's waiver of immunity in its own courts, however, does not necessarily operate as a consent to be sued in federal court as well.... A waiver of the state's Eleventh Amendment immunity effective as to actions brought in federal court must result from a clear legislative intent to accomplish that end.

And, in *Murray v. Wilson Distilling Co.,* 213 U.S. 151, 171, 29 S.Ct. 458, 464, 53 L.Ed. 742 (1909), the Supreme Court held that in deciding whether a State has waived its constitutional protection under the Eleventh Amendment, waiver will be found only where stated "by the most express language or by such overwhelming implications from the text as [will] leave no room for any other reasonable construction."

■ Because there has been no such clear manifestation, indeed, because there has been no manifestation at all, of intent to waive Eleventh Amendment immunity on the part of the Commonwealth of Virginia, her immunity prevents her being haled into federal court to answer claims such as the one before me.

The plaintiff argues, however, that Eleventh Amendment immunity notwithstanding, the Commonwealth of Virginia must be amenable to suits under 42 U.S.C. § 1983 since § 1983 was adopted under authority of the Fourteenth Amendment, which, where necessary, abrogates the Eleventh Amendment. A series of Supreme Court holdings, however, stand against plaintiff's position. In the earliest of these, *Edelman v. Jordan,* 415 U.S. 651, 677, 94 S.Ct. 1347, 1362, 39 L.Ed.2d 662 (1974), the Supreme Court held that a federal court's remedial power "consistent with the Eleventh Amendment, is necessarily limited to prospective injunctive relief ... and may not require a retroactive award which requires the payment of funds from the State treasury." Edelman, then held that damages payable by the

sovereign could not be compelled under § 1983.

Four years later in *Monell v. New York City Department of Social Services,* 436 U.S. 658, 664, 671, 98 S.Ct. 2018, 2022, 2026, 56 L.Ed.2d 611 (1978), the Supreme Court found that a municipality was not clothed with Eleventh Amendment immunity when it faced a plaintiff in a § 1983 action. Although it was speculated that the *Monell* holding eviscerated *Edelman,* in *Alabama v. Pugh, supra,* 438 U.S. at 782, 98 S.Ct. at 3057 the Supreme Court once again affirmed that a sovereign State could not be joined as a defendant from which injunctive relief was sought without violating the Eleventh Amendment, even though the complaint was based on 42 U.S.C. § 1983 and the claim was a violation of the Eighth and Fourteenth Amendments. Finally in *Quern v. Jordan,* 440 U.S. 332, 337, 99 S.Ct. 1139, 1143, 59 L.Ed.2d 358 (1979), the Supreme Court explicitly reaffirmed its distinction "that relief permissible under the doctrine of *Ex parte Young* and that found barred in *Edelman* was the difference between prospective relief on one hand and retrospective relief on the other"; while a federal court, consistent with the Eleventh Amendment, may enjoin State officials to conform their conduct to the requirements of federal law, even though such an injunction may have an ancillary effect on the State treasury, "it may not impose a retroactive award of money payable by the State itself."

Applying this law to the facts of the instant case we necessarily reach two conclusions. First, the Commonwealth of Virginia, never having waived her Eleventh Amendment immunity, is not amenable to a suit for damages in federal court, even when the basis for such suit is a claimed violation of 42 U.S.C. § 1983. Second, only *officials* of the Commonwealth may be enjoined from acts that violate the Constitution.

As the Fifth Circuit stated in *Sessions v. Rusk State Hospital,* 648 F.2d 1066, 1069 (5th Cir.1981):

In *Alabama v. Pugh*, 438 U.S. 781 [98 S.Ct. 3057, 57 L.Ed.2d 1114] (1978) (per curiam), the Supreme Court held that, absent an express waiver by the state of its eleventh amendment immunity, *Edelman v. Jordan*, 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974); *Employees v. Department of Public Health and Welfare*, 411 U.S. 279 [93 S.Ct. 1614, 36 L.Ed.2d 251] (1973); *Parden v. Terminal Ry.*, 377 U.S. 184 [84 S.Ct. 1207, 12 L.Ed.2d 233] (1964), neither the state nor its agencies may be sued for injunctive relief in federal court, although injunctive or prospective relief may be sought against state officials without invoking the eleventh amendment bar. *See Edelman v. Jordan*, 415 U.S. 651 [94 S.Ct. 1347, 39 L.Ed.2d 662] (1974); *Ex Parte Young*, 209 U.S. 123 [28 S.Ct. 441, 52 L.Ed. 714] (1904).... *Alabama v. Pugh* stresses the continuing significance of the distinction between suits against the state or an arm of the state and those against state officials even in actions seeking prospective or injunctive relief. See *Spicer v. Hilton*, 618 F.2d 232, 237 (3d Cir.1980).

■ It is extremely difficult in this context to see what plaintiff hoped to gain by having the Commonwealth of Virginia joined as a party defendant, especially as the Commonwealth in *eo nomine* is not, by reason of her immunity, amenable to suit for a declaratory judgment. *See Starr v. Schram*, 143 F.2d 561 (5th Cir.1944); *Ball v. Brown*, 450 F.Supp. 4, 8 (N.D.Ohio 1977). *See also*, 10 Fed.Proc.L.Ed. § 23:28 (1982). Plaintiff alleges a conspiracy among the Commonwealth, the Attorney General of the Commonwealth, and the State Corporation Commission of the Commonwealth. In point of fact, only the State Corporation Commission and the Attorney General have been in any way active in plaintiff's affairs. The Commonwealth of Virginia, *qua* Commonwealth, has done nothing except have a law passed which the Attorney General seeks to apply to the plaintiff.

For these reasons, the motion to dismiss the Commonwealth of Virginia as a party defendant will be GRANTED.

II

Defendant State Corporation Commission argues in favor of its Fed.R.Civ.P. 12(b)(6) motion to dismiss that being a creature of the Commonwealth, it is clothed with the State's Eleventh Amendment immunity. This argument must be addressed from the perspective of two interrelated questions:

1. Is the State Corporation Commission an *alter ego* of the sovereign, so as to partake of its immunity from damages, injunctive, and declaratory relief under 42 U.S.C. § 1983?

2. Is the State Corporation Commission, notwithstanding such immunity, a "person" under § 1983 and thus by reason of *Ex parte Young*, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), able to be enjoined against future constitutional violations?

In *Mt. Healthy City Board of Education v. Doyle*, 429 U.S. 274, 280, 97 S.Ct. 568, 572, 50 L.Ed.2d 471 (1977), the Supreme Court addressed this first question of whether an entity "is to be treated as an arm of the State partaking of the State's Eleventh Amendment immunity," and concluded the answer depended "upon the nature of the entity created by State law." Elaborating on this answer, the district court in *Jacobs v. College of William and Mary*, 495 F.Supp. at 289, stated that only if the entity created had power distinct and independent from the State did it cease to be "merely a part of the State, or merely its 'alter ego.'"

The State Corporation Commission's memorandum in support of its motion to dismiss is most persuasive in this regard, inviting our attention to Article IX, Section II, of the Constitution of Virginia, which defines the Commission as a department of government through which corporations are allowed to form and through which they are later regulated. Section III of the Article empowers the Commission to function as a judicial tribunal having Statewide authority and whose verdicts may be ap-

pealed to the Supreme Court. By statute the Commission's writs, processes, and orders are in the name of the Commonwealth of Virginia (Va.Code § 12.1–29 (1950)), and all monies paid to the Commission are credited to the State Treasurer. Va.Code § 12.1–17 (1950). State Corporation Commission judgments must be entered in favor of the Commonwealth and paid into the State treasury (Va.Code § 12.1–35 (1950)). Memorandum in Support of Defendant Virginia State Corporation Commission's Motion to Dismiss Complaint, at 2–3.

■ Clearly, the State Corporation Commission has no life other than that derived from the State; rather the agency *is* the Commonwealth itself in its role as business regulator, not an entity independent of it. Accordingly, the reasoning of Part I of this opinion applies to the State Corporation Commission as well as to the Commonwealth, herself. There has been *no* waiver by Virginia of her Eleventh Amendment immunity, and thus the reasoning of the Supreme Court in *Florida v. Treasure Salvors, Inc.*, 458 U.S. 670, 102 S.Ct. 3304, 73 L.Ed.2d 1057, 1067 (1982) must control. There, the Supreme Court addressed the question of whether a federal court in an admiralty in rem action could adjudicate Florida's interest in the property. The Court held:

> ... [T]he federal court had jurisdiction to secure possession of the property from the named state officials, since they had no colorable basis on which to retain possession of the artifacts. The court did not have power, however, to adjudicate the State's interest in the property without the State's consent.

Adverting to *Alabama v. Pugh*, supra, the Supreme Court stated explicitly, "A suit generally may not be maintained directly against the state itself, or against an agency or department of the state, unless the state has waived its sovereign immunity." 102 S.Ct. at 3314, 73 L.Ed.2d at 1068. *Treasure Salvors*, however, raises the second question of whether a State agency is a "person" under 42 U.S.C. § 1983, who

may be enjoined from acts violative of a plaintiff's constitutional rights:

> The Eleventh Amendment does not bar all claims against officers of the State, even when directed to actions taken in their official capacity and defended by the most senior legal officers in the executive branch of the State government. In *Ex parte Young*, 209 U.S. 123, 52 L.Ed. 714, 28 S.Ct. 441, the court held that an action brought against a State official to enjoin the enforcement of an unconstitutional State statute is not a suit against a State barred by the Eleventh Amendment.

102 S.Ct. at 3314, 73 L.Ed.2d at 1068.

States and State *agencies*, however, have traditionally *not* been considered persons under § 1983. In *Curtis v. Everette*, 489 F.2d 516, 521 (3d Cir.1973), for example, the Third Circuit affirmed a district court order dismissing a complaint against the Commonwealth of Pennsylvania and the Pennsylvania Bureau of Corrections "who are not 'person[s]' within the use of that term in 42 U.S.C. § 1983 and hence not subject to suit under that section of the Civil Rights Act."

The reasoning of *Curtis* appears to have survived *Monell*, supra, 436 U.S. at 690 n. 54, 98 S.Ct. at 2035 n. 54, which was specifically limited to "local government units which are not considered part of the state for Eleventh Amendment purposes." Indeed, in *Quern v. Jordan*, 440 U.S. 332, 340, 99 S.Ct. 1139, 1145, 59 L.Ed.2d 358 (1979), the Supreme Court reaffirmed the narrowness of its holding in *Monell*, contrasting the liability of local governmental units with the immunity of a State agency and quoting its holding in *Alabama v. Pugh*, itself involving a claim for injunctive relief, " 'There can be no doubt, however, that suit against the State and its Board of Corrections is barred by the Eleventh Amendment, unless Alabama has consented to the filing of such a suit.' "

The same result must obtain with regard to the propriety of a declaratory judgment issued against the State Corporation Commission. As an *alter ego* of the State, it

shares the Eleventh Amendment immunity of the Commonwealth from suit under 28 U.S.C. §§ 2201 and 2202. In summary, we can see the State Corporation Commission as immune from suit both because it partakes of the Commonwealth's Eleventh Amendment immunity and because, like Virginia itself, it is not a "person" under Section 1983. It is, therefore, neither answerable in this Court for damages nor subject to claims for injunctive or declaratory relief. Accordingly, the motion to dismiss the State Corporation Commission as a defendant will be GRANTED.

## III

On 18 July 1983, defendant Attorney General Baliles filed a motion to dismiss this action as to him, based on Fed.R.Civ.P. 12(b)(1) and 12(b)(6). He urges in support of this motion the absolute immunity traditionally accorded the prosecutorial function, or, in the alternative, the qualified immunity accorded executive officers in the course of their official duties. He claims, additionally, that plaintiff has failed to state a claim under either 42 U.S.C. § 1983 or 42 U.S.C. § 1985; that plaintiff's allegations of conspiracy are conclusory, unsupported by the allegation of sufficient facts; and, finally, that this Court should abstain from hearing the case, there being a State proceeding currently pending.

### A

In *Imbler v. Pachtman*, 424 U.S. 409, 431, 96 S.Ct. 984, 995, 47 L.Ed.2d 128 (1976), the Supreme Court addressed the question of a prosecutor's immunity from claims arising under 42 U.S.C. § 1983 and held: "... [I]n initiating a prosecution and in presenting the State's case, the prosecutor is immune from a civil suit for damages under § 1983." The *Imbler* court, however, believed it had "no occasion to consider whether like or similar reasons require immunity for those aspects of the prosecutor's responsibility that cast him in the role of an administrator or investigative officer rather than that of advocate." *Imbler*, at 430–431, 96 S.Ct. at 994–995.

Two years later in *Butz v. Economou*, 438 U.S. 478, 516, 98 S.Ct. 2894, 2915, 57 L.Ed.2d 895 (1978), the Supreme Court addressed the question of the immunity from damages to be accorded an official of an administrative agency and held: "[T]hose officials who are responsible for the decision to initiate or continue a proceeding subject to agency adjudication are entitled to absolute immunity from damages liability for their parts in that decision." The Supreme Court drew a special attention to the role of an agency attorney in such proceedings and stated "[W]e can see no substantial difference between the function of the agency attorney in presenting evidence in an agency hearing and the function of the prosecutor who brings evidence before a court." *Butz*, at 516, 98 S.Ct. at 2916.

It is thus clear that whether defendant Baliles is viewed as a prosecutor bringing plaintiff to bar before the State Corporation Commission in its judicial capacity or as an administrative officer whose task it is to initiate agency proceedings, he is immune from Section 1983 claims for damages.

The *Butz* court also emphasized that its holding was informed by a plaintiff's ability to have his constitutional grievances heard by an impartial trier of fact. The court stated:

The respondent may present his evidence ... and obtain an independent judgment as to whether the prosecution is justified. His claims that the proceeding is unconstitutional may also be heard by the court.

*Butz*, at 516, 98 S.Ct. at 2915.

Here plaintiff has such remedies. It may present to the State Corporation Commission facts showing that its corporate charter ought not be revoked. It may appeal an adverse determination to the Supreme Court of Virginia. It is, in short, in no way deprived of a forum to hear its claim that its constitutional rights have been violated by Attorney General Baliles' performance of his duties before the State Corporation Commission.

Plaintiff also seeks injunctive and declaratory relief against Attorney General Baliles. As the Supreme Court pointed out in *Supreme Court of Virginia v. Consumers Union*, 446 U.S. 719, 736–37, 100 S.Ct. 1967, 1977, 64 L.Ed.2d 641 (1980):

Prosecutors enjoy absolute immunity from damages liability, *Imbler v. Pachtman*, 424 U.S. 409 [96 S.Ct. 984, 47 L.Ed. 128] (1976), but they are natural targets for § 1983 injunctive suits since they are the state officers who are threatening to enforce and who are enforcing the law. *Gerstein v. Pugh*, 420 U.S. 103 [95 S.Ct. 854, 43 L.Ed. 54] (1975), is only one of a myriad of such cases since *Ex Parte Young*, 209 U.S. 123, 28 S.Ct. 441 [52 L.Ed. 714] (1908), decided that suits against state officials in federal courts are not barred by the Eleventh Amendment. If prosecutors and law enforcement personnel cannot be proceeded against for declaratory relief, putative plaintiffs would have to await the institution of state-court proceedings against them in order to assert their federal constitutional claims. This is not the way the law has developed....

In the context of the present controversy, however, there is simply no activity on the part of defendant Baliles that would amount to an ongoing violation of plaintiff's First and Fourteenth Amendment rights. Preliminarily, it should be noted that plaintiff's charter allowed it to distribute novelties, magazines, books, and newspapers. However, *Roth v. United States*, 354 U.S. 476, 485, 77 S.Ct. 1304, 1309, 1 L.Ed.2d 1498 (1957) clearly holds that obscene material enjoys no First Amendment protection. Therefore, in no way could plaintiff claim that the Commonwealth authorized it to purvey obscene materials. Clearly, in excess of sixty felony convictions for doing so could reasonably be considered an abuse of its charter.

Section 13.1–93 of the Code of Virginia is simply the statutory mechanism by which the Attorney General initiates State Corporation Commission revocation of the charter of *any* corporation which has abused the Commonwealth's permission to use the corporate form of doing business for purposes set forth in that charter. The provision applies with equal force to any corporation whose activities are outside the permissible ambit of its charter.

Plaintiff argues, however, that its past convictions for, or at least charges of, distributing obscene matter do not prove his present or future inventory obscene. Thus, plaintiff avers, Attorney General Baliles must be enjoined against seeking a show cause order, and the application of Va.Code § 13.1–93 must be declared a violation of plaintiff's First and Fourteenth Amendment rights. This argument is without merit.

In the first place, in initiating procedures to revoke a corporate charter, the Attorney General, not being a soothsayer, must necessarily rely on past infractions, not future violations. But plaintiff would have itself to be an exception to this rubric because its wares are words and pictures, "presumptively" protected by the First Amendment. Plaintiff overlooks the salient point that depriving it of corporate status in no way deprives Croatan Books of its right to sell books, novelties, magazines, or newspapers because it may continue operation in whatever form seems suitable.

**B**

Even, however, if Attorney General Baliles did not enjoy such immunity, plaintiff has failed to allege facts sufficient to make out a claim under § 1983. True, the conduct it complains of was committed by a person acting under color of State law, but in no way has this conduct deprived the plaintiff of rights, privileges, or immunities which the Constitution or laws of the United States secure to him. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1912, 68 L.Ed.2d 420 (1981). In its memorandum in support of the motion to dismiss, the Attorney General persuasively calls our attention to the fact that even if the proceedings before the State Corporation Commission were successful, even if plaintiff's corporate charter were taken it has not been

deprived of the exercise of its constitutionally protected rights. It may reorganize his business as a sole proprietorship, as a partnership, general or limited; a new corporate charter may even be obtained. In short, the ability to sell sex books, the First Amendment right claimed, will not be abridged by any unfavorable decision of the State Corporation Commission. At most, the legal entity may be required to take a different form; the business itself would not be destroyed or even affected.

## C

■ Plaintiff's complaint under 42 U.S.C. § 1985(3) is equally ill-founded. In *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971), the Supreme Court firmly established the parameters of a Section 1985 action when it said "[T]he language requiring intent to deprive of equal protection, or equal privileges and immunities, means that there must be some racial, or perhaps otherwise class-based invidiously discriminatory animus behind the conspirators' action." In *Cribb v. Pelham*, 552 F.Supp. 1217, 1224 (D.S.C.1982), the district court elaborated on this requirement and stated, "[T]he fact remains that neither the Supreme Court nor the Fourth Circuit Court of Appeals has identified any classes other than racial or religious classifications;" like plaintiffs in *Cribb*, Croatan Books has "failed to allege any discrimination based on an impermissible classification."[2] Because, therefore, plaintiff does not fit within the protective contours of Section 1985(3), its claim for relief under that section cannot be granted.

Plaintiff alleged the offending conspiracy existed among the Commonwealth of Virginia, the State Corporation Commission, and the Attorney General. Although plaintiff alleged "conspiracy," it has no supporting facts in its complaint. Indeed, it is hard to imagine that it could properly allege any such facts. The Commonwealth, as such, is a concept; it has no mind; by its nature it cannot conspire. Similarly the State Corporation Commission is a legal concept. Its members or employees may conspire, but the State Corporation Commission, itself, is conceptually unable to do so. While Attorney General Baliles has the capacity to conspire he cannot conspire with entities which lack that capacity. But even if a conspiratorial capacity existed, plaintiff has not alleged facts sufficient to state it. In *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977), the court delineated the appropriate standard for dismissing conspiracy suits under Section 1983:

> [F]ederal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts.

Indeed, the court's language in *Slotnick* might well apply to the instant case: "The complaint contains frequent references to conspiracy, but it offers few insights into the specific nature of the alleged concerted action." *Slotnick* at 33.

---

**2.** In *United Brotherhood of Carpenters and Joiners of America v. Scott*, — U.S. ——, 103 S.Ct. 3352, 77 L.Ed.2d 1049 (1983), the Supreme Court reviewed the history of § 1985(3) and concluded:

> To accede to that view would go far toward making the federal courts, by virtue of § 1985(3), the monitors of campaign tactics in both state and federal elections, a role that the courts should not be quick to assume. If respondents' submission were accepted, the proscription of § 1985(3) would arguably reach the claim that a political party has interfered with the freedom of speech of another political party by encouraging the heckling of its rival's speakers and the disruption of the rival's meetings.
>
> Even if the section must be construed to reach conspiracies aimed at any class or organization on account of its political views or activities, or at any of the classes posited by Senator Edmunds, we find no convincing support in the legislative history for the proposition that the provision was intended to reach conspiracies motivated by bias towards others on account of their economic views, status, or activities.

## IV

■ As a final ground for his motion to dismiss, defendant Attorney General Baliles urges that this Court abstain from taking jurisdiction over the matter because there is pending before the State Corporation Commission a proceeding quasi criminal in nature. *Younger v. Harris*, 401 U.S. 37, 54, 91 S.Ct. 746, 755, 27 L.Ed.2d 669 (1971) stands for the proposition that a federal court ought not interfere with pending State criminal proceedings absent conduct by State officials in bad faith or with the intent to harass or unless prosecution is under a statute which is flagrantly and patently unconstitutional. In *Hoffman v. Pursue, Ltd.*, 420 U.S. 592, 609, 95 S.Ct. 1200, 1210, 43 L.Ed.2d 482 (1975), the Supreme Court extended its holding in *Younger* to apply to certain civil proceedings having a criminal context within the State courts. The Court held:

> [W]e do not believe that a State's judicial system would be fairly accorded the opportunity to resolve federal issues arising in its courts if a federal district court were permitted to substitute itself for the State's appellate courts. We therefore hold that Younger standards must be met to justify federal intervention in a State judicial proceeding as to which a losing litigant has not exhausted his State appellate remedies.

The situation in *Hoffman v. Pursue* is remarkably similar to the case before me. The State prosecutor filed a civil statutory action for an injunction against defendant operator of a cinema specializing in obscene films. The statutory remedy was the closing of the theatre for up to one year. Though the remedy was far more drastic than the relatively innocuous and formalistic relief sought by the Attorney General, the Supreme Court firmly ruled that the federal courts must abstain from interfering with the State proceeding.

Plaintiff has argued that *Patsy v. Florida Board of Regents*, 457 U.S. 496, 102 S.Ct. 2557, 73 L.Ed.2d 172 (1982) vitiates *Hoffman*, but such a reading misconstrues the *Patsy* holding. *Patsy* involved an employee of Florida International University who filed a 42 U.S.C. § 1983 claim against her employer alleging sex and race discrimination. The Supreme Court held that exhaustion of State administrative remedies is not a prerequisite to bringing a § 1983 action. Exhaustion principles and abstention principles, however, are fundamentally different. The doctrine of abstention is not grounded in the need for a plaintiff to use whatever State procedures are available before coming to a federal forum. Rather, abstention has its sources in the idea of federalism,

> [W]hich teaches that federal courts must refrain from hearing constitutional challenges to State action under certain circumstances in which federal action is regarded as an improper intrusion on the right of a State to enforce its laws in its own courts.

Charles A. Wright, The Law of Federal Courts, Section 52(A) at 320 (4th Ed.1983).

Federal courts, therefore, under both Younger and Hoffman are obliged to refrain from taking jurisdiction in certain classes of cases where a State action is pending. Plainly, the proceedings before the State Corporation Commission, if viewed as judicial in nature, must qualify as pending State action quasi-criminal in nature, but even if characterized as administrative proceedings, the federal courts are cautioned not to interfere. In *Rizzo v. Goode*, 423 U.S. 362, 380, 96 S.Ct. 598, 608, 46 L.Ed.2d 561 (1976), the Supreme Court looked at a district court order directing the police of Philadelphia to file a comprehensive program to handle citizen complaints of police misconduct. The Court held:

> ... [T]he principles of federalism which play such an important part in governing the relationship between federal courts and state governments, though initially expounded and perhaps entitled to their greatest weight in cases where it was sought to enjoin a criminal prosecution in progress, have not been limited either to that situation or indeed to a criminal proceeding itself. We think these principles likewise have applicability where in-

junctive relief is sought, not against the judicial branch of the state government, but against those in charge of an executive branch of an agency of state or local governments....

The plaintiff cannot escape the holdings in *Younger* and *Hoffman.* He has alleged no facts indicating bad faith, nor the desire to harass, nor a statute unconstitutional on its face, one of which is needed to bring his cause of action within the exceptions allowed by *Younger* and re-enunciated by the Supreme Court in *Hoffman.* Instead, he fits squarely within the paradigm established by the Supreme Court in those cases; he has facing him a quasi-criminal proceeding before the State Corporation Commission; unsuccessful there, he may appeal to the Virginia Supreme Court and unsuccessful there he may seek a federal forum in the Supreme Court of the United States.

For these reasons Attorney General Baliles' motion to dismiss will be GRANTED. Indeed, abstention, though not advanced by the other two defendants, affords a basis for dismissing the action as to them, also.

An appropriate judgment shall issue.