José Feliciano **BOLET** and María Mejías Calero, Plaintiffs,

v.

**PUERTO RICO ELECTRIC POWER AUTHORITY, et al., Defendants.**

**Civil No. 14–1631 (GAG).**

United States District Court, D. Puerto Rico.

Signed May 19, 2015.

Heriberto Guivas–Lorenzo, Guivas & Quinones Law Offices, Aguada, PR, for Plaintiffs.

Luis M. Rodriguez–Lopez, Guzman & Rodriguez–Lopez Law Offices, Angel J. Valencia–Gatell, Department of Justice of Puerto Rico, Idza Diaz–Rivera, Luis M. Rodriguez–Lopez, Guzman & Rodriguez–Lopez Law Offices, San Juan, PR, for Defendants.

## OPINION AND ORDER

GUSTAVO A. GELPÍ, District Judge.

Plaintiff in this matter, José Feliciano Bolet ("Plaintiff"), filed a complaint against the Puerto Rico Electric Power Authority ("PREPA"), several of its employees, and members of the Union de Trabajadores de la Industria Eléctrica y de Riego ("UTIER"), namely, Manuel Pérez Soler ("Pérez Soler"), María Teresa Adames Aquino ("Adames Aquino"), Angel Figueroa Jaramillo ("Figueroa Jaramillo"), Juan A. Morales López ("Morales López"), Angel Alicea Mercado ("Alicea Mercado"), Carlos Lugo Martinez ("Lugo Martinez"), Javier Nieves Pellot ("Nieves Pellot"), Rafael Vélez Alcaide ("Vélez Alcaide") (the latter defendants hereinafter collectively referred to as the "UTIER Defendants" and all defendants in this matter collectively referred to as the "Defendants"). In the complaint, Plaintiff alleges that Defendants, acting under color of state law, conspired with each other to deprive Plaintiff of his constitutionally protected civil rights under the First Amendment to the United States Constitution because of his political affiliation. (Docket No. 1.) Specifically, Plaintiff alleges that several employees of PREPA conspired with the UTIER Defendants to discriminate against him by suspending him without pay and accusing him of a series of violations, including fraud and theft, solely because of his affiliation with the New Progressive Party ("NPP"). (Id.) Plaintiff brings this cause of action pursuant to Section 1983 of the Civil Rights Act of 1991, 42 U.S.C. § 1983, for the alleged violations of his constitutional rights under the First, Fifth and Fourteenth Amendments to the United States Constitution, Article II, Sections 1, 7, 8, 9, and 19 of the Constitution of Puerto Rico, and Article 1802 of the Puerto Rico Civil Code, P.R. LAWS ANN. tit. 31, § 5141. (Id. at 2.)

Presently before this court is the UTIER Defendants' motion to dismiss for failure to state a claim upon which relief can be granted under Fed.R.Civ.P. 12(b)(6). (Docket No. 39.) The UTIER Defendants argue that Plaintiff's federal claim fails as a matter of law because he has failed to sufficiently plead that they were acting under color of state law, as they are not agents of PREPA nor are they part of PREPA's management structure. (Id. at 3.) In other words, the UTIER Defendants argue that that they are not state actors against whom a Section 1983 claim can be brought. (Id.) Plaintiff did not oppose said motion.

After reviewing the UTIER Defendants' submission and the pertinent law, the court **GRANTS in part and DENIES in part** the UTIER Defendants' motion to dismiss at Docket No.

## I. Relevant Factual and Procedural Background

Plaintiff, an active member of the NPP, has worked for PREPA for over twenty years. (Docket No. 1 ¶ 31.) He has held the position of supervisor since approximately 1996, and since 2003, he has worked in the PREPA Commercial Office in Isabela. (Id. ¶ 36.) In November, 2012, general elections were held in Puerto Rico and the Popular Democratic Party ("PDP") prevailed as the majority party. (Id. ¶ 37.) Thereafter, in July, 2013, Plaintiff was transferred from the Isabela Commercial Office to the Arecibo Commercial Office. (Id. ¶ 38.) On August 19, 2013, Plaintiff was informed by Jorge Hernandez Pérez ("Hernandez"), a co-defendant and the Commercial Operation Regional Administrator for the region of Arecibo, and other PREPA officials, that there had been some irregularities in the Isabela office and that Plaintiff was "involved." (Id. ¶ 48.) As a result of his purported involve-

ment, Plaintiff was notified that he was being suspended from employment pursuant to Section 6, Paragraph A of the Collective Bargaining Agreement between PREPA and UTIER, even though this did not apply to Plaintiff as a supervisor. (*Id.* ¶ 49.) Said letter specified that Plaintiff was being suspended because on April 24, 25, 26, 29 and 30, 2013, he allegedly allowed employees under his supervision to use official PREPA vehicles for personal transportation, and in addition, according to time logs prepared by the Security Guards, said employees logged more work hours than was the case. (*Id.* ¶ 50.)

On August 19, 2013, along with Plaintiff, more than a dozen employees from the Isabela office were suspended from their jobs purportedly due to the same facts that were the basis for Plaintiff's suspension. (*Id.* ¶ 63.) On that same day, all the employees that were suspended, with the exception of Plaintiff, were requested to attend a meeting with Figueroa Jaramillo, UTIER's President. (*Id.* ¶ 64.) In said meeting, Figueroa Jaramillo allegedly intimidated the suspended employees by urging them to settle their suspension cases quickly because criminal charges may be brought against them and the union would not provide legal representation for them. (*Id.* ¶ 68.) Moreover, Figueroa Jaramillo along with his fellow UTIER member, Pérez Soler, told the suspended employees that he and Pérez Soler would be meeting with Victor M. Oppenheimer ("Oppenheimer"), a co-defendant and the Director of PREPA's legal division, to accept whatever he offered. (*Id.* ¶ 69.) On August 20, 2013, Pérez Soler told the suspended employees that the meeting with Oppenheimer had been held and that an offer was made to reinstate the employees to their jobs. (*Id.* ¶ 70.) However, in exchange for the reinstatement, the suspended employees were required to prepare sworn statements against Plaintiff.

(*Id.*) The sworn statements would be prepared directly by PREPA and signed by the suspended employees. (*Id.* ¶ 79.)

Thereafter, on August 22, 2013, an informal hearing was held in which Plaintiff was informed that his suspension stood, but this time without pay. (*Id.* ¶ 54.) That same day, Plaintiff was told to attend another hearing on August 23, 2013 to discuss the Investigative Report, but said hearing was never held. (*Id.* ¶ 55.) Subsequently, Plaintiff received a letter confirming his suspension without pay. (*Id.*) Plaintiff argues that the accusations, which included fraud and theft, were fabricated solely because Defendants wanted to fire all the remaining NPP supervisors in the region. (*Id.* ¶ 80.) Plaintiff remained without work and pay until May, 2014, when, in an administrative disciplinary procedure being litigated between PREPA and Plaintiff, the case examiner issued an interlocutory resolution ordering the provisional restitution of Plaintiff to his employment while the case transpired. (*Id.* ¶ 81.) This was decided after an investigation of the case file revealed that PREPA had suspended Plaintiff prior to holding any informal hearing, in direct violation of Plaintiff's right to Due Process. (*Id.*) Currently, the administrative case is ongoing. (*Id.* ¶ 82.)

Plaintiff thereafter filed a complaint in this court, claiming that several employees of PREPA and the UTIER Defendants discriminated against him by conspiring to and then violating his rights under the Constitution of the United States and the Commonwealth's Constitution, and his right to be free from the negligence of others. (Docket No. 1.)

## II. Standard of Review

When considering a motion to dismiss for failure to state a claim upon which

relief can be granted, *see* FED.R.CIV.P. 12(b)(6), the court analyzes the complaint in a two-step process under the current context-based "plausibility" standard established by the Supreme Court. *See Schatz v. Republican State Leadership Comm.,* 669 F.3d 50, 55 (1st Cir.2012) (citing *Ocasio–Hernández v. Fortuño–Burset,* 640 F.3d 1, 12 (1st Cir.2011) which discusses *Ashcroft v. Iqbal,* 556 U.S. 662, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) and *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). First, the court must "isolate and ignore statements in the complaint that simply offer legal labels and conclusions or merely rehash cause-of-action elements." *Id.* A complaint does not need detailed factual allegations, but "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937. Second, the court must then "take the complaint's well-pled (i.e., non-conclusory, non-speculative) facts as true, drawing all reasonable inferences in the pleader's favor, and see if they plausibly narrate a claim for relief." *Schatz,* 669 F.3d at 55. Plausible, means something more than merely possible, and gauging a pleaded situation's plausibility is a context-specific job that compels the court to draw on its judicial experience and common sense. *Id.* (citing *Iqbal,* 556 U.S. at 678–79, 129 S.Ct. 1937). This "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of" the necessary element. *Twombly,* 550 U.S. at 556, 127 S.Ct. 1955.

"[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but it has not 'show[n]'—'that the pleader is entitled to relief.'" *Iqbal,* 556 U.S. at 679, 129 S.Ct. 1937 (quoting FED.R.CIV.P. 8(a)(2)). If, however, the "factual content, so taken, 'allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged,' the claim has facial plausibility." *Ocasio–Hernández,* 640 F.3d at 12 (quoting *Iqbal,* 556 U.S. at 678, 129 S.Ct. 1937.)

According to Local Rule 7(b), the opposing party to a motion has fourteen days after the service of the motion to file a written objection to that motion, incorporating a memorandum of law. *See* Local Rule 7(b) (D.P.R.2009). If the opposing party fails to do so, that party shall be deemed to have waived any objection to the moving party's arguments.

## III. Discussion

In their motion to dismiss, the UTIER Defendants argue that Plaintiff has failed to sufficiently plead state action on part of the UTIER Defendants, as is required for a Section 1983 claim, because the UTIER Defendants are private actors that represent the non-management workers at PREPA. (Docket No. 39 at 2.) Plaintiff failed to oppose the UTIER Defendants' motion to dismiss at Docket No. 39.

### A. *"Under Color of State Law" Requirement*

For a claim to be cognizable under Section 1983 of the Civil Rights Act of 1991, a plaintiff must plead and prove three elements of the cause of action: (1) that the named defendant acted under color of state law; (2) that the plaintiff was deprived of federally protected rights, privileges or immunities; and (3) that the defendant's alleged conduct was causally connected to the plaintiff's deprivation. *Gutierrez–Rodriguez v. Cartagena,* 882 F.2d 553, 558 (1st Cir.1989). "[Section] 1983 creates no independent substantive rights, but rather provides a cause of action by which individuals may seek money

damages for governmental violations of rights protected by federal law." *Cruz–Erazo v. Rivera–Montáñez,* 212 F.3d 617, 621 (1st Cir.2000) (citing *Albright v. Oliver,* 510 U.S. 266, 271, 114 S.Ct. 807, 127 L.Ed.2d 114 (1994)).

Plaintiff's Section 1983 claim is grounded in violations of his rights under the First, Fifth and Fourteenth Amendment to the United States Constitution. As noted above, the UTIER Defendants presently challenge only one element of Plaintiff's Section 1983 claim, that being that Plaintiff has failed to provide enough factual allegations to sufficiently plead that the UTIER Defendants acted under the color of state law.

■ "To act under color of state law for [Section] 1983 purposes does not require that the defendant be an officer of the state." *Dennis v. Sparks,* 449 U.S. 24, 27, 101 S.Ct. 183, 66 L.Ed.2d 185 (1980). It does, however, require that the alleged misconduct causing the deprivation of a plaintiff's rights be fairly attributable to the State. *See Lugar v. Edmondson Oil Co., Inc.,* 457 U.S. 922, 937, 102 S.Ct. 2744, 73 L.Ed.2d 482 (1982). The Supreme Court has recognized the ability to hold a private individual liable under Section 1983 if he or she is a willful participant in joint activity with the State or its agents. *See Dennis,* 449 U.S. at 27, 101 S.Ct. 183. To show that the individual's actions are fairly attributable to the state, thereby amounting to state action, the plaintiff must satisfy two elements: (1) the deprivation must be caused by the exercise of some right or privilege created by the state or by a rule of conduct imposed by the State and (2) the party charged with the deprivation must be a person who may fairly be said to be a state actor. *Lugar,* 457 U.S. at 937, 102 S.Ct. 2744. Both elements must be present. Therefore, satisfaction of the first element is not enough to satisfy the state action requirement, because if it were, "private parties could face constitutional litigation whenever they sought to rely on some state rule...." *Alberto San, Inc. v. Consejo De Titulares Del Condominio San Alberto,* 522 F.3d 1, 4 (1st Cir. 2008).

■ With respect to the second element, it is well-established that to determine whether a private party can be fairly characterized as a state actor, one of three tests must be met: (1) the state compulsion test; (2) the joint action/nexus test; or the (3) public function test. *Estades–Negroni v. CPC Hosp. San Juan Capestrano,* 412 F.3d 1, 4–5 (1st Cir.2005). Applicable to the present case is the joint action/nexus test because Plaintiff's complaint alleges that the UTIER Defendants worked in joint activity with the PREPA officials to discriminate against him. Under this test, "a private party can be held to be a state actor where an examination of the totality of the circumstances reveals that the state has 'so far insinuated itself into a position of interdependence with the private party that it was a joint participant in the [challenged activity].'" (*Id.* at 5.) In other words, this test applies "where private citizens are participant[s] in joint activity with the State or its agents." *Alberto San, Inc.,* 522 F.3d at 5 (internal quotation marks omitted).

■ One way to show that a private citizen participated in joint activity with the State or its agents is by showing that the private party engaged in a conspiracy with the State or its agents to form a common goal to violate the plaintiff's federal constitutional rights. *See Dennis,* 449 U.S. at 27, 101 S.Ct. 183 (holding that private parties who corruptly conspire with a judge act under color of state law, even though the judge is protected by judicial immunity); *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 152, 90 S.Ct. 1598, 26

L.Ed.2d 142 (1970) (holding that a store employee who reached an understanding with a policeman to deny the petitioners access to a store "plainly provides the state action essential to show a direct violation of petitioner's Fourteenth Amendment equal protection rights"). The First Circuit has defined a civil rights conspiracy as:

[a] combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties to inflict a wrong against or injury upon another, and an overt act that results in damages.

*Earle v. Benoit,* 850 F.2d 836, 844 (1st Cir.1988); *see also Marcello v. Maine,* 457 F.Supp.2d 55, 62–63 (D.Me.2006). A private party involved in such a conspiracy with the State or its agents is therefore considered to be acting under color of state law to be liable under Section 1983 for the deprivation of a plaintiff's constitutional rights. *See Adickes,* 398 U.S. at 152, 90 S.Ct. 1598 ("Private persons, jointly engaged with state officials in the prohibited action, are acting under color of law.").

B. *State Action with Respect to UTIER Defendants Adames Aquino, Morales López, Alicea Mercado, Lugo Martínez, Nieves Pellot and Vélez Alcaide*

■ Turning to the present case, Plaintiff alleges that the UTIER Defendants acted under color of state law by conspiring with the PREPA Defendants to deprive Plaintiff of his constitutional rights. (Docket No. 1 ¶ 83.) Specifically, Plaintiff argues that Adames Aquino, Morales López, Alicea Mercado, Lugo Martínez, Nieves Pellot, and Vélez Alcaide provided false statements against him to regain their own employment. (Docket No. 1

¶¶ 18, 20, 21, 22, 24, 26.) Plaintiff contends that these sworn statements were prepared by PREPA Defendants and signed by these UTIER defendants. (Docket No. 1 ¶ 72.)

■ "In an effort to control frivolous conspiracy suits under [Section] 1983, federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy." *Slotnick v. Staviskey,* 560 F.2d 31, 33 (1st Cir.1977). As such, "complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Id.* "Pleading conspiracy under section 1983 requires at least a minimum factual support of the existence of a conspiracy." *Francis–Sobel v. Univ. of Maine,* 597 F.2d 15, 17 (1st Cir.1979). Accordingly, to proceed over the motion to dismiss hurdle, Plaintiff must sufficiently allege that these UTIER defendants willfully agreed with PREPA Defendants to suspend Plaintiff from his employment and then acted upon this agreement, in violation of his constitutionally protected rights.

An examination of the complaint reveals that throughout its entirety, Plaintiff only refers to each of these defendants twice, alleging the exact same thing for all of them. To illustrate, Plaintiff alleges that with respect to Morales López, "Mr. Morales provided false statements against Feliciano in order to regain his own employment and to justify [Plaintiff's] unjust removal and suspension." (Docket No. 1 ¶ 18.) The exact same thing is pleaded regarding the other five Defendants at ¶¶ 18–28 and then repeated at ¶ 78 where Plaintiff alleges "defendants Juan A. Morales Lopez, Angel Alicea Mercado, Carlos Lugo Martinez, Javier Nieves Pellot, Rafael Velez Alcaide and Edwin Rodriguez

Lopez, provided false sworn statements against him concerning alleged wrongdoings on his part." *(Id.* ¶¶ 18–28, 78.) In light of these limited allegations, the court finds that with respect to these defendants, Plaintiff was bound to do more than merely state vague and conclusory allegations concerning the existence of a conspiracy. Plaintiff has failed to allege any agreement between these defendants and PREPA that would show the existence of a conspiracy amounting to state action. As the complaint stands, it appears that these defendants simply signed a statement to regain their employment but there was no meeting of the minds with any PREPA officials regarding any unlawful activity.

Accordingly, Plaintiff fails to plead sufficient allegations to sustain the existence of a conspiracy that would allow this court to conclude that these defendants became state actors-the necessary second requirement of state action. Thus, for the reasons stated above, this court **GRANTS** the UTIER Defendants' motion to dismiss as to defendants Adames Aquino, Morales López, Alicea Mercado, Lugo Martínez, Nieves Pellot and Vélez Alcaide.

### C. *UTIER Defendants Pérez Soler and Figueroa Jaramillo*

 ˙With respect to UTIER defendants Pérez Soler and Figueroa Jaramillo, Plaintiff alleges that acting together with PREPA Defendants, they "coerced UTIER employees to give false statements against Feliciano–Bonet." (Docket No. 1 ¶ 14, 16.) Specifically, Plaintiff alleges that these defendants met with Oppenheimer, the Director of PREPA's legal division, and agreed to reinstate the suspended employees to their jobs under the condition that they sign a sworn statement against Plaintiff. *(Id.* at ¶ 70.)

As noted above, Plaintiff's complaint must plead that both Pérez Soler and Figueroa Jaramillo acted in concert with PREPA Defendants to suspend him, thus causing his deprivation of his constitutionally protected rights. In *Adickes v. S.H. Kress & Co.,* the Supreme Court found a private individual to be acting under color of state law for reaching an understanding with a police officer to deprive the plaintiff of her civil rights and then acted upon that agreement. *See Adickes,* 398 U.S. at 152, 90 S.Ct. 1598. Similarly, in *Dennis v. Sparks,* the Supreme Court decided that the plaintiff had a cause of action against some private actors due to plaintiff's allegations that the defendant's had reached an agreement with a judge to deprive plaintiff of property in violation of the Due Process of law. *See Dennis,* 449 U.S. at 28–29, 101 S.Ct. 183. The facts of *Adickes* and *Dennis* are analogous to the facts of the present case as they involve private actors who have been found to be jointly working with state actors to deprive another of his or her rights and then acting upon such agreement.

It is clear from Plaintiff's complaint that Pérez Soler and Figueroa Jaramillo, both private actors, met with Oppenheimer, an undisputed state actor, and agreed to reinstate the employees in exchange for their signature in sworn statements against Plaintiff. (Docket No. 1 ¶¶ 69–74.) ˙Indeed, Perez Soler even dismissed any worries that the employees had about signing the statements and insisted that it had to be done. *(Id.* ¶ 74.) When construing all reasonable inferences in the light most favorable to Plaintiff, the joint action/nexus test, i.e., the finding of a civil rights conspiracy, is met here. Thus, for Section 1983 purposes, these defendants can be fairly characterized as state actors do to their joint activity with PREPA officials.

Accordingly, Plaintiff has pleaded sufficient facts to support a determination that the alleged conduct of · these defendants has been committed under color of state law, and has resulted in a deprivation of Plaintiff's constitutional rights. Accordingly, for these reasons, this court DENIES the UTIER Defendants' motion to dismiss as to defendants Pérez Soler and Figueroa Jaramillo.

## IV. CONCLUSION

For the reasons stated above, this court **GRANTS** the UTIER Defendants' motion to dismiss at Docket No. 39, as to Adames Aquino, Morales López, Alicea Mercado, Lugo Mártínez, Nieves Pellot and Vélez Alcaide and **DENIES** the motion to dismiss with respect to Pérez Soler and Figueroa Jaramillo.

**SO ORDERED.**