Marta I. TORRES ROSADO, Plaintiff,

v.

**Angel E. ROTGER SABAT, et al., Defendants**

No. CIV.00–1899–JP.

United States District Court, D. Puerto Rico.

May 7, 2002.

Manuel R. Suarez–Jimenez, San Juan, PR, for plaintiff.

John F. Nevares, Smith & Nevares, San Juan, PR, Salvador J. Antonetti-Stutts, Dept. of Justice, Fed. Lit. Div., San Juan, PR, Luis F. Del Valle–Emanuelli, Garcia & Fernandez, San Juan, PR, Luis V. Villares–Sarmeinto, Sanchez, Betances & Sifre, San Juan, PR, for defendants.

## OPINION AND ORDER

PIERAS, Senior District Judge.

## I. INTRODUCTION

The Court currently has before it co-Defendants Aníbal Torres Rivera, José Fuentes Agostini and Angel Rotger Sabat's Motion for Summary Judgment (docket No. 143). Since more than ten days have elapsed and Plaintiff has not filed an opposition thereto, both motions stand unopposed. *See* Local Rule 311.5. Therefore, all uncontested facts in the two motions are deemed and accepted as true.[1]

1. Co–Defendants Torres Rivera, Fuentes Agostini and Rotger Sabat filed their Motion for Summary Judgment on April 15, 2002. According to Local Rule 311.5, all oppositions thereto were due 10 days thereafter. On April 29, 2002, three days after it was due, Plaintiff requested another of the many extensions of time she has already requested in this

Co–Defendants allege that summary judgment should be granted in their favor on all counts, and in addition, allege that they are entitled to qualified immunity. For the reasons herein stated, and because the Court finds that no outstanding questions of fact remain so as to create a genuine issue of material fact, co-Defendants' Motion for Summary Judgment is hereby **GRANTED,** and the federal causes of action against them are **DISMISSED WITH PREJUDICE.**

## II. FACTUAL CONTENTIONS

Based on the record and the parties' contentions, and after having completed discovery in the instant matter, the Court finds the following facts to be undisputed.

1. The Plaintiff in this case is Marta I. Torres Rosado, a Special Agent of the Special Investigations Bureau (hereinafter SIB) of the Puerto Rico Justice Department.

2. Said division investigated public employees suspected of being engaged in public corruption.

3. Plaintiff worked for the SIB for a period of approximately fifteen years.

4. Plaintiff occupied a career position and was classified as "Agent III".

5. On October 23, 1998, Plaintiff was the supervisor of a public integrity squad, a designation given to Agent III's who held the trust of the Director of the SIB.

6. Co–Defendant Aníbal Torres named Plaintiff to this position.

7. Plaintiff Torres did not compete for this supervisory position.

8. Plaintiff's immediate supervisor until October 21, 1998, was Nolan Pérez.

9. Senator Aníbal Marrero Pérez was being investigated by the SIB during the month of and prior to October 1998.

10. Plaintiff Rosado was in charge of this investigation.

11. On October 16, 1998, Plaintiff wrote a memorandum to co-Defendant Torres Rivera in which she expressed concern about the paralyzed status of the investigation.

12. Plaintiff states that co-Defendant Torres Rivera did not ask her to stop or paralyze the investigation.

13. Plaintiff states that this memo was for co-Defendant Torres Rivera's knowledge, that she did not intend this memo to be known to others.

14. As a result of the October 16, 1998 memorandum, Defendant Torres Rivera held a meeting with Plaintiff Torres on the afternoon of October 23, 1998.

15. Also present at the meeting on October 23, 1998, was José Ramos Román.

16. At that meeting, co-Defendant Torres Rivera gave Plaintiff a memorandum in response to her memo of October 16, 1998.

17. At the October 23, 1999 meeting, co-Defendant Torres Rivera handed Plaintiff a memorandum stating, "In the face of your assertion, I have no other alternative but to withdraw my trust as a supervisor of Section 3, GID".

case, to file an opposition on May 6, 2002, the day trial was originally scheduled to begin. Trial is now scheduled to begin on May 10, 2002, only three days after Plaintiff wishes to file her opposition. The Court denied Plaintiff's Motion due to her 11th hour request, and the close proximity of the trial date. Since Plaintiff did not comply with the original deadline to oppose the co-Defendants' Motion for Summary Judgment, it is therefore deemed unopposed.

18. Co–Defendant Torres Rivera also re-assigned her and removed her from the Pérez Marrero investigation.

19. At said meeting, Plaintiff Torres requested vacation leave, and filed a request.

20. CO–Defendant Torres Rivera told Plaintiff she could have the vacation leave subject to her handing in a report concerning case NIE–98–111, the case that had prompted the October 16, 1998 memo.

21. Mr. José Ramos signed the form recommending the vacation leave.

22. On October 26, 1998, co-Defendant Torres Rivera went to José Ramos' office, and inquired if Plaintiff had filed the report.

23. Co–Defendant Torres Rivera denied Plaintiff's vacation leave, writing on the vacation leave request that Plaintiff could not enjoy her vacation until she handed in the report.

24. Co–Defendant Torres Rivera had not seen or spoken with Plaintiff Torres since October 23, 1998 until he saw her in depositions or hearings related with the events of this lawsuit.

25. On October 26, 1998, co-Defendant Torres Rivera wrote a memo to Plaintiff Torres where he again placed her in charge of investigation NIE 98–111.

26. That same day after lunch, Mr. José Ramos received a telephone call from Plaintiff, and she informed him that her son was sick and that she could not come in to meet with Co–Defendant Deputy Attorney General Angel Rotger Sabat, or draft the report.

27. Sometime after October 26, 1998, Plaintiff Torres delivered a medical certificate dated October 25, 1998.

28. This certification stated that the patient was under medical treatment on October 25, 1998, due to chicken pox.

29. On November 4, 1998, *El Vocero* published nine articles related to Senator Aníbal Marrero Pérez.

30. Plaintiff stated she never spoke to the press or to Javier Maymí, a reporter from *El Vocero*, concerning the articles published by that paper which Plaintiff claims were the basis of a retaliation claim.

31. November 16, 1998 was co-Defendant Torres Rivera's last day as Director of the SIB.

32. On November 16, 1998, co-Defendant Torres Rivera wrote a memo to co-Defendant Attorney General José Fuentes Agostini requesting an investigation and evaluation of Plaintiff's conduct to determine if disciplinary action should be taken against her.

33. Co–Defendant Torres Rivera has never seen or spoken to co-Defendant José Fuentes Agostini since Torres Rivera left the SIB on November 17, 1998.

34. Inspector General Inés Carrau recused herself from the internal administrative investigation because of her friendship with Plaintiff.

35. On November 17, 1998, co-Defendant José Fuentes Agostini instructed Itala Rivera Buonomo to intervene as Inspector General in carrying out an administrative investigation regarding the conduct of Plaintiff Torres Rosado.

36. On November 20, 1998, Plaintiff returned to work, and submitted medical evidence regarding her and her son's condition.

37. On that same day, Plaintiff submitted the report requested by former Director Torres Rivera regarding the investigation of Senator Pérez Marrero.

38. On November 20, 1998, Plaintiff Torres received a hand-delivered letter from Itala Rivera Buonomo, notifying her of the administrative complaint that had been lodged against her for insubordination and leave of absence from work.

39. Plaintiff was absent from work between October 26, 1998 and November 20, 1998.

40. Plaintiff's first report regarding the status of the case was unsatisfactory.

41. Plaintiff presented a second report regarding the status of Senator Marrero's investigation on November 24, 1998.

42. While Plaintiff was away from the office, a newspaper article appeared in *El Vocero* newspaper that allegedly discredited Plaintiff.

43. The article mentioned that some spiritism or witchcraft (in Spanish, "santería") material had been found in her car, and that it was evident that Plaintiff was "doing spiritual jobs" against some members of the government, including co-Defendant Torres Rivera.

44. Plaintiff was receiving confidential information from a source regarding alleged unlawful activities of Senator Marrero Pérez.

45. Plaintiff reported to the State Insurance Fund on November 25, 1998.

46. On December 9, 1998, Itala Rivera Buonomo handed in her preliminary report regarding the administrative investigation of Agent Marta Torres Rosado.

47. The report concluded that Plaintiff Torres Rosado had incurred in insubordination and leave of absence from work.

48. On January 28, 1999, co-Defendant José Fuentes Agostini informed Plaintiff through a letter that beginning that day, she was suspended from her job with pay.

49. Said letter also advised her of her right to appeal the decision.

50. On April 9, 1999, an administrative hearing was held where Plaintiff Torres, accompanied by her lawyer, was able to present evidence and testimony in her favor.

51. Plaintiff claims that the administrative hearing was a sham.

52. The hearing officer, Pablo Montaner, Esq., stated under penalty of perjury, that he based his decision on the law and the evidence presented.

53. The hearing officer rendered his report on May 19, 1999, and concluded that Plaintiff Torres had incurred in an act of insubordination and leave of absence from work.

54. On June 30, 1999, a certified letter was sent to Plaintiff Torres informing her of her destitution and her right to appeal the decision.

55. On November 15, 1999, Plaintiff sued her supervisor, Aníbal Torres Rivera in the Puerto Rico Court of First Instance, San Juan Part, for defamation and money damages.

56. As a result of the lawsuit filed in the Commonwealth court, Plaintiff was reinstated to her job with back pay in or around June, 2001.

57. Plaintiff is a practicing Catholic.

58. Agents for the SIB must name their sources to their supervisors, to the Director of the SIB, and to the Attorney General, if so requested. Not naming their source could jeopardize and investigation.

## III. STANDARD

Rule 56(c) of the Federal Rules of Civil Procedure provides for the entry of sum-

mary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Pagano v. Frank,* 983 F.2d 343, 347 (1st Cir.1993); *Lipsett v. University of Puerto Rico,* 864 F.2d 881, 894 (1st Cir.1988). Summary judgment is appropriate where, after drawing all reasonable inferences in favor of the non-moving party, there is no genuine issue of material fact for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is material if, based on the substantive law at issue, it might affect the outcome of the case. *Id.* at 248, 106 S.Ct. at 2509; *Mack v. Great Atl. & Pac. Tea Co., Inc.,* 871 F.2d 179, 181 (1st Cir.1989). A material issue is "genuine" if there is sufficient evidence to permit a reasonable trier of fact to resolve the issue in the non-moving party's favor. *See Anderson,* 477 U.S. at 248, 106 S.Ct. at 2509; *Boston Athletic Ass'n v. Sullivan,* 867 F.2d 22, 24 (1st Cir.1989).

The party filing a motion for summary judgment bears the initial burden of proof to show "that there is an absence of evidence to support the non-moving party's case." *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986). The burden then shifts to the non-movant to show that "sufficient evidence supporting the claimed factual dispute [exists] to require a jury or judge to resolve the parties' differing versions of truth at trial." *See First Nat'l Bank of Ariz. v. Cities Serv. Co.,* 391 U.S. 253, 288–89, 88 S.Ct. 1575, 1592–93, 20 L.Ed.2d 569 (1968). The party opposing summary judgment may not rest upon mere allegations or denials of the pleadings, but must affirmatively show, through filing of supporting affidavits or otherwise, that there is a gen-

uine issue for trial. *Id.; see also Goldman v. First Nat'l Bank of Boston,* 985 F.2d 1113, 1116 (1st Cir.1993). On issues where the non-movant bears the ultimate burden of proof, he must present definite, competent evidence to rebut the motion. *Anderson,* 477 U.S. at 256–57, 106 S.Ct. at 2514–15.

## IV. ANALYSIS

Plaintiff has brought forth a barrage of claims under a variety of statutes. As far as the Court has been able to discern from the confusing allegations in the Amended Complaint, they are: under the 1st amendment, for freedom of speech, whistleblower protection, retaliation, religious belief and/or religious expression; procedural due process under the 14th Amendment; conspiracy to violate civil rights; and for confiscation of salary without due process. Plaintiff has also brought claims under articles 1802 and 1803 of the Civil Code of Puerto Rico, 31 P.R. Laws Ann. §§ 5141 and 5142, which this Court is empowered to hear under supplemental jurisdiction pursuant to 28 U.S.C. § 1336. The Court now proceeds to analyze the claims brought forth by Plaintiff.

### A. *First Amendment claims for freedom of speech*

█ It has been held that "absolute First Amendment protection is not accorded to any grievance a public employee files against an employer, without regard to content". *See Tang v. State of R.I., Dept. of Elderly Affairs,* 163 F.3d 7, 11–12 (1st Cir.1998). If it did, anything anyone said "would plant the seed of a constitutional case". *Id.* The standard for analyzing civil rights when the parties contend that they have been dismissed for exercising their First Amendment rights is the one espoused in *Pickering v. Board of Educ. of Township High Sch. Dist. 205, Will Coun-*

ty, Ill., 391 U.S. 563, 88 S.Ct. 1731, 20 L.Ed.2d 811 (1968), and its progeny, and more recently restated in the landmark case of *Connick v. Myers*, 461 U.S. 138, 103 S.Ct. 1684, 75 L.Ed.2d 708 (1983). In both of these cases, the Supreme Court made it very clear that public employees did not relinquish their rights to comment on matters of public concern by virtue of the fact that they are government employees. *Id.* at 139, 103 S.Ct. at 1686, *citing Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. At the same time, however, they also recognized that the state had a vested interest in regulating the speech of its employees, and that that interest differed from the interest the state possessed in regulating the speech of the citizenry in general. *Id.* The balance that the Court must undertake, then, is between the interests of the citizens in commenting on matters of public concern, and of the state, as an employer, in providing efficient services through those employees. *Id.*

In cases of this nature, the *Pickering*, and later the *Connick* Court, established a three part test to determine whether Plaintiff could have a valid, actionable First Amendment freedom of speech claim. First, the Court must determine whether Plaintiff Torres made her statement—in this instance, whether the content of her memorandum—was a matter of public concern. *Connick*, 461 U.S. at 147, 103 S.Ct. 1684, 75 L.Ed.2d 708. On the other hand, if the speech involved is not a matter of public concern, but is instead of "personal interest, a federal court is not the appropriate forum in which to review the wisdom of a personnel decision taken by a public agency allegedly in reaction to the employee's behavior". *Id.* Second, the Court must weigh the strength of the employee's and the public's First Amendment interests against the government's interest in the efficient performance of the workplace. *See Pickering*, 391 U.S. at 568, 88

S.Ct. at 1734–35. If the first two prongs of the test are met—if the employee's and the public's First Amendment interests outweigh a legitimate governmental interest in curbing the employee's speech— Plaintiff Torres must then show that the protected expression was a substantial or motivating factor in the adverse employment action at issue. *See O'Connor v. Steeves*, 994 F.2d 905, 913 (1st Cir.1993); *see also Tang*, 163 F.3d at 11.

Having examined Plaintiff Torres' claims, the Court can only conclude that they fail at the first step because she has not demonstrated that her speech involved matters of public concern. In assessing whether Plaintiff's speech implicates public concern, the Court must analyze "the content, form, and context of [the speech], as revealed by the whole record." *Connick*, 461 U.S. at 147–48, 103 S.Ct. at 1684.

The Court now turns to the landmark case of *Connick v. Myers*, since the facts of the case before it are very much akin to those in *Connick*. *Connick* involved an Assistant District Attorney in New Orleans who worked in the criminal division. When Connick, the District Attorney, proposed to transfer her to prosecute cases in a different section of the criminal court, she strongly opposed the transfer, expressing said opposition to several of her supervisors, including Connick. Shortly thereafter, she prepared a questionnaire that she distributed to the other Assistant District Attorneys in the office concerning office transfer policy, office morale, the need for a grievance committee, the level of confidence in supervisors, and whether employees felt pressured to work in political campaigns. Connick then informed Myers that she was being terminated for refusal to accept the transfer, and also told her that her distribution of the questionnaire was considered an act of insubordination.

Myers filed suit in federal district court under 42 U.S.C. § 1983, alleging that she was wrongfully discharged because she had exercised her constitutionally protected right of free speech. The district court agreed, ordered her reinstated, and awarded backpay, damages, and attorney's fees. Upon finding that the questionnaire, not the refusal to accept the transfer, was the real reason for Myers' termination, the court held that the questionnaire involved matters of public concern and that the State had not "clearly demonstrated" that the questionnaire interfered with the operation of the District Attorney's office. The Court of Appeals affirmed, yet the Supreme Court reversed, and held that Myers' discharge did not violate the First Amendment.

The Court, citing to *Pickering*, attempted to determine a public employee's rights of free speech, arriving "at a balance between the interests of the [employee], as a citizen, in commenting on matters of public concern and the interest of the State, as an employer, in promoting the efficiency of the public services it performs through its employees." *Pickering*, 391 U.S. at 568, 88 S.Ct. at 1734. The Court opined that in *Connick*, except for the question regarding pressure upon employees to work in political campaigns, the questions posed did not fall under the rubric of matters of public concern. Rather, they involved only the inner workings of the office of the District Attorney, and were thus matters of a more personal nature.

The Court further held that Myers, because she was not commenting on matters of public concern, had a limited First Amendment interest which did not require the District Attorney to tolerate actions that he reasonably believed would disrupt the office, undermine his authority, and destroy the close working relationships within the office. To conclude, the Court found that the fact that the questionnaire emerged immediately after a dispute between Myers, Connick and his deputies, required that additional weight be given to Connick's view that Myers threatened his authority to run the office.

Turning to the case at hand, and in much the same fashion, the Court finds that Plaintiff Torres' concerns expressed to her superior in her memorandum of October 16, 1998, were not matters of public concern, but more of Plaintiff's individual, personal concerns about her work and the investigation, that only concerned her and her supervisor. *See also Tang*, 163 F.3d at 12. Specifically, the memorandum at issue read:

My informant related to. the case of public functionary BSI–980111, told me that with regard to this investigation, phone calls should be made to the Honorable Ramón Luis Rivera, for him to contribute information regarding the case, since according to another source, he is willing to cooperate in everything, because he is aware of all the 'misdeeds' which this functionary is performing.

It is my concern that at present this investigation is paralyzed due to lack of communication with you, since it is you who are authorized to give us instructions whether to proceed or not regarding this case with the aforesaid debriefings.

At the last meeting held with you, you indicated you would make efforts to verify with the federal agencies whether there was an investigation into this matter to thus know what course of action to follow.

It should be stated that the agent who has this matter assigned was given a photograph of the persons who are under investigation, and in addition, the CI gave him a photocopy of a check payable to the public functionary in question for

the sum of $750.00, which is in the case file.

As far as the Court can ascertain, these are not matters of public concern, but Plaintiff's personal concerns about the status of an investigation, which is an internal affair. Indeed, Plaintiff herself, in her Second Amended Complaint, admits that "she merely expressed her worries concerning the confidential case under investigation assigned to her". Second Amended Complaint at 26 (docket No. 2). The Court agrees with the Supreme Court in that "... the First Amendment does not require a public office to be run as a roundtable for employee complaints over internal office affairs." *Connick*, 461 U.S. at 149, 103 S.Ct. 1684.

Much like in *Connick*, the Court perceives the matters in the case at bar relate to the fundamental inner workings of an office—that Plaintiff perceived the investigation was proceeding too slowly. While corruption in the Puerto Rican senate are certainly matters of public concern, the investigation itself, or how it is progressing, is entirely an internal matter, and not of public concern. That is to say, while the end result might be a matter of public concern, the means to that end, is not. Therefore, it is evident that Plaintiff's speech did not pertain to matters of public concern. The Court therefore holds that the contents of Plaintiff's memorandum were not matters of public concern, and thus, not protected speech. Consequently, her claims of free speech stemming from the memorandum must fail, since they do not surpass the constitutional hurdle of protected speech. Therefore, co-Defendants' request for summary judgment on this issue is hereby **GRANTED,** and Plaintiff's First Amendment claims regarding free speech against all co-Defendants are hereby **DISMISSED WITH PREJUDICE.**

### B. *First Amendment claim for whistleblower protection*

When addressing First Amendment claims brought forth for whistleblowing, the Court must use the three part test set forth by the First Circuit in *O'Connor v. Steeves*, 994 F.2d 905 (1st Cir.1993). In *O'Connor*, the First Circuit held that in order to determine whether a public employee's First Amendment right to speak has been infringed upon requires: 1) a determination of whether the employee was speaking as a citizen upon a matter of public concern; 2) whether the employee's right to speak out and the information of public interest which the employee sought to impart outweigh the governmental interest in promoting the efficient performance of public service; and 3) whether the government would have reached the same decision even in absence of the protected conduct. *O'Connor*, 994 F.2d at 911. However, the Court's analysis need not even get to this point since it concludes, as a matter of law, that Plaintiff has not made out a valid claim for whistleblower protection.

Retaliation for whistleblowing is not a foreign practice, and Congress specifically passed a statute in response to such behavior, *see* Whistleblower Protection Act of 1989, 5 U.S.C. § 1213 (West 2001), as have numerous states. Generally speaking, in order for a claim to fall under the whistleblowing rubric, a plaintiff must generally assert a desire to publicly denounce or reveal illegal conduct. *See Id.; see also Larch v. Mansfield Mun. Elec. Dept.*, 272 F.3d 63, 67 (1st Cir.2001) (plaintiff has a cause of action under Massachusetts Whistleblower Statute when he objects to, or refuses to participate in any activity, policy or practice which the employee reasonably believes is in violation of a law, or a rule or regulation promulgated pursuant to law, or

which the employee reasonably believes poses a risk to public health, safety or the environment); *Higgins v. New Balance Athletic Shoe, Inc.*, 194 F.3d 252, 261 (1st Cir.1999) (Maine Whistleblowers' Protection Act protects an employee from discrimination when he has complained to the employer in good faith about a workplace-related condition or activity that he reasonably believes is illegal, unsafe, or unhealthy); *Marqués v. Fitzgerald*, 99 F.3d 1, 4 (1st Cir.1996) (Rhode Island statute kicks in when an employee [ ... ] reports or is about to report to a public body, verbally or in writing, a violation which the employee knows or reasonably believes has occurred or is about to occur, of a law or regulation, or rule promulgated under the law of this state, a political subdivision of this state, or the United States).

■ Puerto Rico does not have a whistleblowing statute *per se*, but rather whistleblowing protection is attached to the statute granting relief for employees discharged without just cause, which is the exclusive remedy for wrongful termination under Puerto Rico law. 29 P.R. Laws Ann. § 185a–185l (West, 2001); *Rodríguez v. Eastern Air Lines, Inc.*, 816 F.2d 24 (1st Cir.1987); *Weatherly v. International Paper Co.*, 648 F.Supp. 872, 877 (D.Puerto Rico 1986); *Vargas v. Royal Bank of Canada*, 604 F.Supp. 1036 (D.Puerto Rico 1985). It is for that reason that the law was amended to specifically allow some remedy for whistleblowers. 29 P.R. Laws Ann. § 185b; *In Re: El San Juan Hotel Corp.*, 149 B.R. 263 (D.Puerto Rico 1992).

■ In much the same fashion as the federal and state statutes, however, the Puerto Rico whistleblower statute provides that some type of public disclosure of information either be imminent or have actually occurred in order for a valid cause of action under this statute to exist.

"A discharge made by the mere whim of the employer or without cause relative to the proper and normal operation of the establishment shall not be considered as a discharge for good cause. Neither shall it be considered just cause for discharging an employee, his/her collaboration or expressions made by him/her pertaining to his/her employer's business before any administrative, judicial or legislative forum in Puerto Rico when said expressions are not of a defamatory character nor constitute disclosure of privileged information according to law. In this last case, in addition to any other corresponding adjudication, the employee thus discharged shall have the right to have an order issued for immediate restitution in his/her employment and to be compensated for an amount equal to the salaries and benefits not received from the date of discharge until a court orders reinstatement in his/hers employment".

29 P.R. Laws Ann. § 185b (West 2002).

In the case at bar, Plaintiff has not complained to a public body, or anyone else for that matter, about any illegal, unsafe activities that have occurred or that were about to occur in her workplace. Plaintiff merely wrote a memorandum, to her supervisor, regarding a concern she had about the status of an investigation. The most important aspect of a whistleblowing claim—the actual public exposure, or threat thereof, of an illegal or unsafe act—simply was not present here. Plaintiff herself admits she did not speak to the press about it. Therefore, under these facts, the Court cannot hold that a whistleblowing cause of action has been alleged. Therefore, the Court **GRANTS** Summary Judgment in favor of all co-Defendants regarding this cause of action, and **DISMISSES WITH PREJUDICE** Plaintiff's First Amendment claims for whistleblowing.

## C. *First Amendment claim for retaliation*

In retaliation claims, the standard is the one espoused in *Pickering v. Board of Education, supra,* and *Connick v. Myers, supra,* as previously discussed. In essence, the Court must determine whether Plaintiff Torres' statement (the contents of her memorandum), were matters of public concern, and must then weigh the strength of her as well as the public's First Amendment interests, against the government's interest in the efficient performance of the workplace. *Pickering,* 391 U.S. at 568, 88 S.Ct. at 1734.

However, the Court's analysis regarding this cause of action is brief, since, as in the analysis performed regarding Plaintiff's right to free speech, the Court finds that the matters in the memorandum was not matters of public concern. Therefore, the Court's analysis stops here, and holds that Plaintiff has not alleged a valid claim for retaliation under the first Amendment, and consequently, **GRANTS** Summary Judgment for all co-Defendants regarding the retaliation claim. Plaintiff's claim under this statute is **DISMISSED WITH PREJUDICE.**

Plaintiff also brought forth claims alleging First Amendment violations when she refused to reveal confidential information to her superiors, specifically the name of her source. The Court is at a loss to understand how a reluctance to reveal something could ever violate anyone's free speech rights. The Court can find no case that holds that refusing to name a confidential source violates a person's First Amendment rights. However, if Plaintiff's claim is that retaliation occurred because she refused to name this source, the Court can likewise find no case that holds that the name of a confidential source is a matter of public concern. Therefore, as in its previous analysis, the Court finds that this is not a matter of public concern—it relates solely to the inner workings of the Justice Department, particularly to the progress of this investigation, and is therefore not protected speech. Therefore, the claims against all co-Defendants regarding this cause of action are **DISMISSED WITH PREJUDICE.**

## D. *First Amendment claim for free exercise of religion*

Plaintiff Torres claims her first amendment rights "to religious belief and expression" (Amended Complaint, Par. 34), were violated when her superior informed the newspaper *El Vocero* that she was engaged in spiritism or witchcraft (in Spanish, "santería").

After a careful examination of the facts, the Court can find no violation of the establishment clause. *See generally, Abington School District v. Schempp,* 374 U.S. 203, 83 S.Ct. 1560, 10 L.Ed.2d 844 (1963) (Goldberg, J. concurring), *Lemon v. Kurtzman,* 403 U.S. 602, 91 S.Ct. 2105, 29 L.Ed.2d 745 (1971) (detailing the analysis involved in an establishment clause claim). The Court therefore turns its analysis to the free exercise clause.

In order to prevail in a claim based on a violation of the First Amendment right under the free exercise clause, a claimant must show that government action either forbids conduct which is dictated by a person's religious beliefs or compels conduct which is forbidden by that person's religious beliefs. *Sherbert v. Verner,* 374 U.S. 398, 83 S.Ct. 1790, 10 L.Ed.2d 965 (1963); *see also Lyng v. Northwest Indian Cemetery Protective Ass'n,* 485 U.S. 439, 108 S.Ct. 1319, 99 L.Ed.2d 534(1988).

In the case at bar, the Court fails to see how an allegation to a newspaper that Plaintiff Torres was practicing "sante-

ría" could have possibly interfered with whatever religion she practices. Plaintiff has not shown that the comment forbids conduct which is dictated by her religious beliefs or how the comment compelled her to act in a way that is forbidden by her religious beliefs. Therefore, co-Defendants Torres Rivera, Fuentes Agostini and Rotger Sabat's request for summary judgment on this issue is hereby **GRANTED**, and Plaintiff's First Amendment claims for the free exercise of religion are also hereby **DISMISSED WITH PREJUDICE.**

### E. *Procedural Due Process under the 14th Amendment*

The due process clause of the Fifth and Fourteenth Amendments forbid any state from "depriv[ing] any person of life, liberty, or property without due process of law." To prevail in a § 1983 action alleging deprivation of procedural due process, a plaintiff must prove "that the conduct complained of deprived the plaintiff of a cognizable property interest," *see Parratt v. Taylor*, 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420; *Lowe v. Scott*, 959 F.2d 323, 334 (1st Cir.1992), without due process.

Plaintiff Torres alleges that her procedural due process rights were violated in four instances: when she was stripped of her supervisory duties and functions; when she was suspended with pay from her position at the Bureau of Special Investigations on January 28, 1999; when the pre-termination hearing was held; and when she was finally permanently discharged in June 1999. In order to prevail on this claim, Plaintiff must show (1) that she had a cognizable, protected property interest in her employment; (2) that the co-Defendants deprived her of that protected property interest in that employment; and (3) that the deprivation was worked without due process.

Under the due process clause of the Fourteenth Amendment, persons who possess a property interest in continued public employment cannot be deprived of that interest without due process of law. *See* U.S. Const. Amd. XIV; *Kauffmann v. Puerto Rico Tel. Co.*, 674 F.Supp. 952 (D.Puerto Rico 1987). At a minimum, due process rights entitle such individuals to "notice and a meaningful opportunity to respond" prior to termination. *Kercado–Meléndez v. Aponte–Roque*, 829 F.2d 255, 263 (1st Cir.1987). The Constitution does not create property interests; instead, "they are created and their dimensions are defined by existing rules or understandings that stem from an independent source such as state law ...." *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972).

Puerto Rican law grants a property interest in employment to career employees. *See Kauffman v. Puerto Rico Tel. Co.*, 841 F.2d 1169, 1173 (1st Cir.1988). Therefore, Plaintiff Torres had a cognizable property interest which she claims to have been deprived of, since she was a career employee at the SIB. Plaintiff has also successfully cleared the second prong of the due process analysis—that co-Defendants deprived her of a protected property interest in her employment when they dismissed her, since the heart of her Complaint is that she was dismissed. The Court finds, however, that Plaintiff has not successfully alleged that she was deprived of said property interest without due process.

As previously stated, an essential principle of due process is that a deprivation of life, liberty and property be "preceded by notice and an opportunity for a hearing appropriate to the nature of the case". *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 313, 70 S.Ct. 652, 656, 94 L.Ed. 865 (1950). The most basic

requirement of due process is the opportunity for the employee to present evidence before he is deprived of any significant property interest. *Boddie v. Connecticut,* 401 U.S. 371, 379, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *see also Bell v. Burson,* 402 U.S. 535, 542, 91 S.Ct. 1586, 1591, 29 L.Ed.2d 90 (1971). This principle requires "some kind of a hearing" prior to the discharge of an employee who has a constitutionally protected property interest in his employment. *Roth,* 408 U.S. at 569–570, 92 S.Ct., at 2705; *Perry v. Sindermann,* 408 U.S. 593, 599, 92 S.Ct. 2694, 2698, 33 L.Ed.2d 570 (1972). The Court now analyzes Plaintiff's claims against this backdrop.

### 1. *Supervisory duties*

■ Plaintiff's first claim is that her due process rights were violated when she was stripped of her supervisory duties as a supervisor for Group II of the Government Corruption Section of the SIB. However, under *Perry* and *Boddie,* an essential element of the due process clause is "that an individual be given an opportunity for a hearing before he is deprived of any *significant* property interest". *See also Loudermill,* 470 U.S. at 544–45, 105 S.Ct. at 1494–95 (emphasis added).

In the case at bar, Plaintiff was merely told she would no longer be a supervisor. Her salary and job title and investigatory functions remained intact; only her supervisory function changed. In fact, she was even re-assigned to the Senator Marrero investigation two days later. The Court finds a significant property interest was not at stake here. *See Roth,* 408 U.S. at 569–570, 92 S.Ct. at 2705 (a hearing is required prior to the *discharge* of an employee); *see also generally Brasslett v. Cota,* 761 F.2d 827 (1st Cir.1985). Here, Plaintiff was not discharged or even suspended—her position and salary remained

unchanged—only her functions were altered. The Court sees no error in this.

### 2. *Discharge with pay*

■ Plaintiff's second argument is that her discharge with pay was effected without due process. However, it has been held that suspension with pay oftentimes does not raise due process concerns. *See generally Bennett v. City of Boston,* 869 F.2d 19 (1st Cir.1989); and *Loudermill,* 470 U.S. at 544–545, 105 S.Ct. at 1495; (The Supreme Court has held that "in those situations when the employer perceives a significant hazzard in keeping the employee on the job, it can avoid the problem by suspending with pay"). And there are of course, situations even where a post-deprivation hearing satisfies the constitutional due process requirements. *See Ewing v. Mytinger & Casselberry, Inc.,* 339 U.S. 594, 70 S.Ct. 870, 94 L.Ed. 1088 (1950); *North American Cold Storage Co. v. Chicago,* 211 U.S. 306, 29 S.Ct. 101, 53 L.Ed. 195 (1908). The question in the case at bar then becomes what kind of deprivation was effected.

It is clear that the significance of the private interest in retaining employment cannot be gainsaid, and the Supreme Court has frequently recognized the severity of depriving a person of the means of livelihood. *See Fusari v. Steinberg,* 419 U.S. 379, 389, 95 S.Ct. 533, 539, 42 L.Ed.2d 521 (1975); *Goldberg v. Kelly,* 397 U.S. 254, 264, 90 S.Ct. 1011, 1018, 25 L.Ed.2d 287 (1970); *Sniadach v. Family Finance Corp.,* 395 U.S. 337, 340, 89 S.Ct. 1820, 1822, 23 L.Ed.2d 349 (1969). In *Loudermill, supra,* Justice Marshall, concurring with the majority, commented on the importance of a hearing "before the decision is made to terminate an employee's wages..." *Id.* at 1496. However, Plaintiff Torres was not stripped of her livelihood

without a hearing, since she was suspended *with* pay—she was not terminated.

A claimant has not been deprived of process merely because he was suspended with pay. *See generally, Arnett v. Kennedy,* 416 U.S. 134, 94 S.Ct. 1633, 40 L.Ed.2d 15 (1974), *Loudermill,* 470 U.S. at 544–545, 105 S. Ct at 1495. In the end, as discussed in *Loudermill,* Plaintiff was suspended with pay, pending the hearing where she could espouse her views and present evidence in her favor. The Court sees no error in this either, and, having determined that no due process deprivation was worked by suspending Plaintiff with pay, the question then becomes whether the hearing Plaintiff was afforded prior to being finally discharged was procedurally adequate.

### 3. *Pre-termination hearing*

As previously discussed, both *Roth, Perry* and their progeny have clearly held that "some kind of hearing" prior to the discharge of an employee with a constitutionally protected interest in his employment is necessary, *Roth,* 408 U.S. at 569–570, 92 S.Ct. at 2705, *Perry,* 408 U.S. at 599, 92 S.Ct. at 2698, and further, that the hearing must be held "at a meaningful time". *Armstrong v. Manzo,* 380 U.S. 545, 552, 85 S.Ct. 1187, 1191, 14 L.Ed.2d 62 (1965). The opportunity to present reasons, either in person or in writing, why a proposed action should not be taken, is a fundamental due process requirement. *See also* Friendly, "Some Kind of Hearing," 123 U. Pa. L.Rev. 1267, 1281 (1975). The tenured public employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *See Arnett,* 416 U.S. at 170–171, 94 S.Ct. at 1652–1653 (opinion of Powell, J.); *Id.,* at 195–196, 94 S.Ct. at 1664–1665 (opinion of White, J.).

"To require more than this prior to termination would intrude to an unwarranted extent on the government's interest in quickly removing an unsatisfactory employee". *Loudermill,* 470 U.S. at 546, 105 S.Ct. at 1495.

In the case at bar, a full investigation was launched into the circumstances surrounding Plaintiff's absences. In November 1998, she was supplied with a copy of the Complaint filed against her, a copy of the general by-laws of the Justice Department regarding the procedures that would be followed, and notification of the aforementioned investigation. In January 1999, a letter was sent to Plaintiff regarding the decision to suspend her with pay, and also informing her of her right to request a hearing to present evidence in support of her contentions. In April 1999, a timely hearing was held where Plaintiff assisted accompanied by her attorney, where she was allowed to present evidence. Shortly thereafter, the Report of the Examining Officer ensued, which was unfavorable to Plaintiff. In June 1999, Secretary of Justice Fuentes Agostini adopted the hearing examiner's recommendations in his report and Plaintiff received a letter notifying her she was discharged. Said letter also informed Plaintiff of her right to appeal before the Administration System Board of Appeals ("JASAP"), which she did.

The Court finds no error in this exchange. Plaintiff had an opportunity to, and did present evidence at the hearing before the hearing examiner. Therefore, the Court cannot conclude, as a matter of law, that Plaintiff was deprived of her procedural due process rights. It can only conclude that the process afforded to Plaintiff before she was deprived of her livelihood—her salary—was procedurally adequate. In addition, the fact that she appealed the final determination of the hearing examiner before JASAP effective-

ly serves to trump her claim for lack of procedural due process for her permanent discharge. The Court can find no violation of Plaintiff's procedural due process rights, finding that she had a timely pre-termination hearing, and an opportunity to appeal the final determination. The Court therefore **DISMISSES WITH PREJUDICE** Plaintiff's claims for procedural due process against all co-Defendants.

### F. Conspiracy claims under 42 U.S.C. § 1985

 Plaintiff has brought forth claims of conspiracy under both § 1985 and § 1983 against all of the co-Defendants. The statute in its most pertinent portion describes conspiracy as follows:

> [I]f two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, either directly, or indirectly, any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws...

42 U.S.C. § 1985(3) (West 2001). The Supreme Court has written on this very section and has found that the language requiring the intent to "deprive of equal protection or equal privileges and immunities, means that there must be some *racial, or perhaps otherwise class-based*, invidiously discriminatory animus behind the conspirators' action." (Emphasis added.) *Griffin v. Breckenridge*, 403 U.S. 88, 102, 91 S.Ct. 1790, 1798, 29 L.Ed.2d 338 (1971); *see also Kush v. Rutledge*, 460 U.S. 719, 103 S.Ct. 1483, 75 L.Ed.2d 413 (1983); *Santana v. Calderón*, 188 F. Supp.2d 160 (D.Puerto Rico 2002) (Pieras, J.); *Mass. v. McClenahan*, 893 F.Supp. 225 (S.D.N.Y. 1995).

The Court finds that Plaintiff's allegations are simply insufficient to support a claim of conspiracy under the auspices of 42 U.S.C. § 1985(3). Plaintiff has failed to clear the first hurdle, since she failed to allege any racial or other class-based, discriminatory animus behind the alleged conspirators' actions, which is a necessary prerequisite in order to bring forth a claim under this statute. Therefore, Summary Judgment is **GRANTED** in favor of all co-Defendants regarding Plaintiff's claims under 42 U.S.C.1985(c), and they are hereby **DISMISSED WITH PREJUDICE**.

### G. Conspiracy claims under 42 U.S.C. 1983

The First Circuit has defined a civil rights conspiracy as,

> "a combination of two or more persons acting in concert to commit an unlawful act, or to commit a lawful act by unlawful means, the principal element of which is an agreement between the parties 'to inflict a wrong against or injury upon another,' and 'an overt act that results in damages.'"

*Earle v. Benoit*, 850 F.2d 836, 844 (1st Cir.1988) (citing *Hampton v. Hanrahan*, 600 F.2d 600, 620–21 (7th Cir.1979), *rev'd in part on other grounds*, 446 U.S. 754, 100 S.Ct. 1987, 64 L.Ed.2d 670 (1980)). *See also Adickes v. Kress*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).

However, in an effort to control frivolous conspiracy suits under § 1983, "federal courts have come to insist that the complaint state with specificity the facts that, in the plaintiff's mind, show the existence and scope of the alleged conspiracy. It has long been the law in this and other circuits that complaints cannot survive a motion to dismiss if they contain conclusory allegations of conspiracy but do not support their claims with references to material facts." *Slotnick v. Staviskey*, 560 F.2d 31, 33 (1st Cir.1977) (*citing Dunn v. Gazzola*, 216 F.2d 709, 711 (1st Cir.1954)); *Kadar Corp. v. Milbury*, 549 F.2d 230 (1st

Cir.1977); *Fletcher v. Hook,* 446 F.2d 14 (3rd Cir.1971); *Johnson v. Stone,* 268 F.2d 803 (7th Cir.1959); *Ellingburg v. King,* 490 F.2d 1270 (8th Cir.1974); *Powell v. Jarvis,* 460 F.2d 551 (2nd Cir.1972).

Bare conclusory allegations of conspiracy are insufficient, and a complaint that fails to "plead in some detail, through reference to material facts, the relationship or nature of the cooperation between the state actors and the private individuals," *Tauvar v. Bar Harbor Congregation of the Jehovah's Witnesses, Inc.,* 633 F.Supp. 741, 747 (D.Maine 1985), including how the conspiracy was made or "hatched", does not state a valid claim for conspiracy. *Slotnick,* 560 F.2d at 33. For conspiracy purposes, simply alleging that defendants acted jointly and in concert and under color of law is insufficient. *McGillicuddy v. Clements,* 746 F.2d 76 (1st Cir.1984); *see also Smith v. Butler,* 507 F.Supp. 952 (D.Pa.1981) (proof of conspiracy is an essential element); *Morgan v. District of Columbia,* 550 F.Supp. 465, *aff'd,* 725 F.2d 125 (D.D.C.1983) (there must be a concerted effort to deprive someone of his civil rights); *Taliaferro v. Voth,* 774 F.Supp. 1326 (D.Kan.1991) (plaintiff must establish specific facts which show a meeting of the minds).

While it is clear that Plaintiff has alleged that she was deprived of her constitutional rights, *see Landrigan v. City of Warwick,* 628 F.2d 736 (1st Cir.1980), the Court finds that Plaintiff has not alleged conspiracy with enough specificity to create a cause of action for conspiracy under § 1983 against any of the co-Defendants.

Against co-Defendant Torres Rivera, who was Plaintiff's supervisor, the facts alleged are as follows:

1. That he retaliated against plaintiff with actions and omissions that culminated in her unlawful dismissal. Amended Complaint, Par. 6.

2. That the retaliation included defaming her with the purpose of undermining her credibility before her confidential sources, colleagues and potential witnesses in a court of law, to "create a pre-emptive strike" that would cause the investigation of Senator Aníbal Marrero Pérez to be "derailed". Amended Complaint, Par. 6.

3. That he ordered Plaintiff not to proceed with the investigation until it was cleared with the federal authorities. Amended Complaint, Par 38.

4. That there were rumors that Torres Rivera was close friends with high ranking members of the Puerto Rico House of Representatives. Amended Complaint, Par. 39.

5. That Torres Rivera called Plaintiff into a meeting with several people on October 23, 1998. Amended Complaint, Par. 39.

6. That Plaintiff went into a second meeting with Torres Rivera and José Ramos at the end of the same day. Amended Complaint, Par. 39.

7. That at said meeting, Torres Rivera stripped Plaintiff of her supervisory duties and assigned her to a new position. Amended Complaint, Pars. 47, 48.

8. That Plaintiff asked Torres Rivera for vacation time, and he in turn asked that Plaintiff prepare a written report of the status of the investigation. Amended Complaint, Par. 50.

9. That Torres Rivera re-assigned Plaintiff to the Senator Marrero investigation 2 days after he had suspended her, on October 26, 1998. Amended Complaint, Par. 58.

10. That Torres Rivera opened an investigation into Plaintiff's absences from work, and so notified Secretary

of Justice José Fuentes Agostini. Amended Complaint, Pars. 61, 65.

11. That upon information and belief, Torres Rivera pressured the hearing officer into submitting a report adverse to Plaintiff. Amended Complaint, Par. 79.

Based on these facts, by themselves, the Court cannot possibly conclude that there was a conspiracy against Plaintiff. Notably absent are the specific allegations of a meeting of the minds and overt acts that are necessary in order to bring forth a conspiracy claim. "Upon information and belief", and "that there are rumors" is simply insufficient, under the case law, to properly allege a conspiracy claim under § 1983. *Tauvar*, 633 F.Supp. at 746; *Slotnick*, 560 F.2d at 33. The Court likewise finds regarding to co-Defendants Fuentes Agostini, Rotger Sabat, and Riestra Cortés, whose factual allegations are fewer and even more remote.

Regarding co-Defendant Fuentes Agostini, the Attorney General, the Amended Complaint states:

1. That he "took the decision" (sic) to suspend Plaintiff from work with pay, and to later dismiss Plaintiff without due process, and who also "took the decision" (sic) to infringe on Plaintiff's liberty and First Amendment rights, equal protection and due process rights. Amended Complaint, Par. 24.

2. That he signed a letter suspending Plaintiff from work in January 1999, and that he did so based on an allegedly frivolous disciplinary request made by co-Defendant Torres Rivera. Amended Complaint, Par. 76.

3. That said letter did not include any allegations that would warrant a suspension with pay. Amended Complaint, Par. 77.

4. That he signed a letter dismissing Plaintiff permanently from work in June 1999. Amended Complaint, Par. 80.

Regarding co-Defendant Rotger Sabat, the Deputy Attorney General, the Amended Complaint states:

1. He was personally involved in the decision-making process and execution of unlawfully dismissing and defaming Plaintiff Torres. Amended Complaint, Par. 23.

2. That in late October, Plaintiff sought a meeting with co-Defendant Rotger Sabat with the purpose of complaining to him about co-Defendant Torres Rivera's inaction regarding Senator Marrero's investigation. Amended Complaint, Par. 74.

3. That even though Plaintiff had scheduled a meeting with co-Defendant Rotger Sabat, she was unable to attend this meeting because of her son's chickenpox condition; *Id.*

4. That he refused to pay Plaintiff overtime, and thus these actions constituted confiscation of property without due process. Amended Complaint, Par. 82.

Regarding all the co-Defendants, in general, the Amended Complaint alleges that:

1. Defendants Hon. Angel E. Rotger Sabat, José A. Fuentes Agostini, Aníbal Torres Rivera, at all times relevant, were engaged in a pattern of conduct of unlawful actions and omissions that sought to retaliate, neutralize or discredit SIB agents that at one time were investigating elected officials and/or their supporters that were engaged in organized crime and/or public corruption activities. Amended Complaint, Par. 7.

2. That upon information and belief, the motive behind their pattern of conduct was and is to cover up acts of public corruption of these high rank-

ing elected officials and politicians such as Senator and Vice President of the Senate, Aníbal Pérez Marrero, with the purpose of preventing adverse publicity that could erode their image before the Puerto Rico electorate. Amended Complaint, Par. 8.

In sum, although the Amended Complaint asserts that the three co-Defendants conspired to deprive Plaintiff Torres of her civil rights, it is devoid of any specific references to material facts pertaining to the alleged conspiracy necessary to establish a valid claim against any of the co-Defendants under § 1983. *See Slotnick,* 560 F.2d. at 33. Particularly, the allegations are not sufficient to prove any meeting of the minds, or any acts in furtherance of the conspiracy. Mere accusations that co-Defendants' purposes were to "cover up acts of public corruption" and to "retaliate, neutralize or discredit SIB agents" that were investigating them, without more, are not enough.

Therefore, the Court finds that Plaintiff's allegations do not support the existence of said conspiracy between the co-Defendants. At most, the allegations brought forth have stated single occurrences that, even if they were taken as a whole, would not support the existence of a conspiracy against Plaintiff. Therefore, Summary Judgment is **GRANTED** for all co-Defendants, and the conspiracy causes of action under § 1983 against them are hereby **DISMISSED WITH PREJUDICE.**

### H. *Confiscation of salary*

Plaintiff also brought forth a claim for confiscation of salary, alleging that only co-Defendant Rotger Sabat confiscated her salary without fair compensation and without due process of law. Amended Complaint, Par. 128. However, the Court notes that in June 2001, Plaintiff was rein-

stated to her previous job, and was paid salaries not received during the time she did not work. That is to say, Plaintiff was made whole regarding both her salary and her job, as if she had never been dismissed. *See Plaintiff's Initial Scheduling Conference Memorandum* (docket No. 116 at 2), and the "Settlement Agreement" signed by the parties pertaining to Plaintiff's claims in the Commonwealth Court and before the Appeals Board (JASAP) (Attachments to docket Nos. 112 and 130). Therefore, since Plaintiff has been made whole regarding this matter, the Court **DISMISSES WITH PREJUDICE** Plaintiff's claims for confiscation of salary against co-Defendant Rotger Sabat, and this dismissal sounds the death knell for her federal causes of action.

However, the Court finds that Plaintiff has remaining claims under Puerto Rico law, but since these claims are not federal claims, and there is no independent basis for federal jurisdiction over Plaintiff's supplemental state law claims, the Court declines to exercise pendent jurisdiction over any of Plaintiff's claims under Puerto Rico law. *See* 28 U.S.C. § 1367(c)(3) (West 2000). Therefore, the Court hereby **DISMISSES** Plaintiff's pendent claims under Puerto Rico Law **WITHOUT PREJUDICE.**

### I. *Qualified immunity*

To conclude, all co-Defendants have alleged that they are protected by the doctrine of qualified immunity. The doctrine of qualified immunity protects government officials who perform discretionary functions from suit and from liability for monetary damages under 42 U.S.C. § 1983. *See Roldán–Plumey v. Cerezo–Suárez,* 115 F.3d 58, 65 (1st Cir.1997). This defense is designed to create a rebuttable presumption of qualified immunity to cover all executive officers that perform discretionary

functions. *Id.; Scheuer v. Rhodes*, 416 U.S. 232, 94 S.Ct. 1683, 40 L.Ed.2d 90 (1974). However, since the Court found no valid causes of action remaining in this Court, it need not reach the question of whether Defendants are protected by the doctrine of qualified immunity.

## V. CONCLUSION

The Court finds that no genuine issues of material fact remain in this case so as to create a trial worthy issue. Therefore, it **GRANTS** the Motion for Summary Judgment in favor of all co-Defendants. Plaintiff's federal claims are hereby **DISMISSED WITH PREJUDICE.** Regarding Plaintiff's claims under Puerto Rico law, the Court declines to exercise pendent jurisdiction over them, and therefore **DISMISSES** the same, **WITHOUT PREJUDICE.**

IT IS SO ORDERED AND ADJUDGED.